E. GRADY JOLLY, Circuit Judge:
 

 Ronald E. Grubbs appeals from the decision of the district court affirming the bankruptcy court’s order which denied confirmation of his amended petition and plan under Chapter 13 of the Bankruptcy Code. The bankruptcy court had ruled that Grubbs’ plan could not be confirmed for the reason that it proposed to cure a pre-petition default and acceleration on a debt on Grubbs’ principal residence contrary to Section 1322(b) of the Code, 11 U.S.C. § 1322(b). Finding that the plan should not have been confirmed, we affirm.
 
 *
 

 I.
 

 Houston First American Savings Association (Houston First), on April 3, 1979, loaned Grubbs the sum of $12,530.16 in return for a promissory note and a mechanic’s lien deed of trust secured by Grubbs’ principal residence. This constituted a second lien encumbrance on Grubbs’ principal residence, the first lien being held by Sam Houston Mortgage Corporation. After attempting to obtain past due payments from Grubbs, Houston First, on February 11, 1980, pursuant to the terms of the note and the mechanic’s lien contract, notified Grubbs that it had elected to accelerate the note’s maturity and demanded payment for the full amount. Houston First advised Grubbs that if the full amount were not paid by March 4, 1980, his residence would
 
 *695
 
 be sold to satisfy the debt in accordance with the terms and provisions of the mechanic’s lien contract and pursuant to state law.
 

 On February 29, 1980, Grubbs filed a petition for relief under Chapter VII of the Bankruptcy Code. This action stayed the foreclosure proceedings which had been instituted by Houston First. The property securing the loan was exempted by Grubbs as his homestead. Grubbs received his discharge in bankruptcy on December 1, 1980. Grubbs’ debt to Houston First, secured by the second lien on his residence, was, of course, not discharged.
 

 On June 4, 1981, Houston First filed suit in the state district court of Harris County, Texas, seeking judgment against Grubbs for the balance of the debt, for foreclosure of its lien and adjudication of the priority of its lien, and for order of sale. On or about July 1, 1981, Grubbs filed a Chapter 13 petition with the bankruptcy court which automatically stayed Houston First’s state court proceedings.
 

 Houston First then filed a motion in the bankruptcy court to modify the statutory automatic stay which was imposed as a result of Grubbs’ Chapter 13 proceeding. Before the court ruled on this motion, Grubbs, on February 26, 1982, asked the bankruptcy court to dismiss his Chapter 13 proceeding. However, on that same day, Grubbs filed another Chapter 13 proceeding.
 

 Pursuant to his Chapter 13 plan, Grubbs proposed to pay Houston First the total amount of the accelerated debt of $11,-701.00 over the thirty-six-month term of the plan. He stipulated that the note due Houston First was properly accelerated and that the full amount of the note had come due some two years prior to the filing of his Chapter 13 petition.
 

 Houston First filed its Objection to Plan claiming that Grubbs’ proposal to pay the debt over the thirty-six-month term of the plan did not satisfy the requirements of Section 1322(b) of the Code, 11 U.S.C. § 1322(b). It based its objection on the fact that the full amount of the debt had matured and was due prior to the filing of Grubbs’ Chapter 13 petition.
 

 Finding that Grubbs’ Chapter 13 plan could not be confirmed for the reason that it proposed to cure a pre-petition default and acceleration on a debt on Grubbs’ principal residence contrary to the provisions of Section 1322(b), the bankruptcy court issued a Memorandum Opinion and Order denying confirmation on June 7, 1982.
 

 Grubbs appealed the Order Denying Confirmation to the United States District Court for the Southern District of Texas. In his appeal, Grubbs primarily argued that the provisions of Section 1322(b)(5) allowed him to cure
 
 any
 
 default, including a pre-pe-tition default and acceleration on a debt on his principal residence. The district court affirmed the bankruptcy court’s order denying confirmation of his plan. From that decision, Grubbs appeals to this court.
 

 II.
 

 The single issue presented in this appeal is whether Grubbs, after defaulting on a home loan and after the outstanding principal and accrued interest had become immediately due and payable under state law, may cure the pre-petition default and acceleration under a Chapter 13 plan which proposes to pay the total amount due over a thirty-six-month period. At the beginning we note that the courts are in sharp disagreement over this question. For a review,
 
 see
 
 Sable,
 
 A Chapter 13 Debtor’s Right to Cure Default Under Section 1322(b): A Problem of Interpretation
 
 57 Am.Bank R.L.J. 127 (1982); Comment,
 
 Home Foreclosures Under Chapter 13 of the Bankruptcy Reform Act,
 
 30 U.C.L.A.L.Rev. 637 (1983).
 

 Because this case presents a question of statutory construction, our principal task is the ascertainment of Congressional intent. There is very little, however, in the language of the statute, or its legislative history, that reveals how Congress intended Chapter 13 to apply to home foreclosure proceedings.
 

 It is clear from the language of the statute that Congress intended to allow a debt-
 
 *696
 
 or to cure defaults on a mortgage or note on his home. It is not as clear, however, whether a debtor may cure a default which has resulted, as in the case here, in acceleration of the total amount due.
 

 The relevant parts of Section 1322(b) which must be applied in resolving this issue read as follows:
 

 (b) ... the plan may—
 

 * * * * * *
 

 (2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor’s principal residence, or of holders of unsecured claims; (3) provide for the curing or waiving of any default;
 

 * * * * * *
 

 (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
 

 Grubbs argues that Section 1322(b)(3) is available to him and allows him to cure his pre-petition default on the debt secured by a security interest in his home. This section must be examined in the context of the other provisions of Section 1322(b) and must be read in a manner that gives effect to each paragraph. When this is done, this court finds- itself in agreement with the pertinent statements made in
 
 In Re Williams,
 
 11 B.R. 504, 506 (Bkrtcy.S.D.Tex.1981). In rejecting a debtor’s argument that Section 1322(b)(3) allowed him to cure a pre-petition default which had been accelerated on a home loan, the court stated as follows:
 

 Although § 1322(b)(3) states that any default may be cured or waived, it appears to the court that (b)(3) was not intended to apply where (b)(5) (which also provides that any default may be cured) is applicable. Congress provided in (b)(2) that the rights of. holders of claims secured by the debtor’s principal residence may not be modified by a plan. Congress further provided an exception to (b)(2) in (b)(5); a default may be cured within a reasonable time if the last payment is due after the last plan payment is due. It is not literally possible for both (b)(3) and (b)(5) to be applicable in this instance — either the debtor may cure any defaults on the debts on their home or they can cure those defaults only if the last payment is due after the final plan payment is due. Since (b)(5) makes specific reference to (b)(2), the court believes that Congress intended the “cure” provision of (b)(5) rather than the “cure” provision of (b)(3) to apply to claims secured only by a security interest in real property that is the debtor’s principal residence. This view is supported by legislative history. The Senate debate on Bankruptcy Code contains this reference to § 1322(b):
 

 Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor’s principal residence.
 
 It is intended that a claim secured by the debtor’s principal residence may be treated with under Section 1322(b)(5) of the House amendment.
 
 (emphasis added).
 

 124 Cong.Rec.S. 17,423 (daily ed. 1978).
 

 This interpretation is bolstered by a review of § 1124(2)(A) and (B). This section allows a Chapter 11 plan to cure any default (other than a § 365(b)(2) default) and to reinstate the maturity of a debt acceleration after a default as such maturity existed before the default. The debtors urge that Congress would not have provided for this right in reorganization cases without intending that it also apply to Chapter 13 cases. However, the court thinks that § 1124(2)(B) demonstrates that Congress was aware of the problems presented by accelerated debts
 
 *697
 
 and could have given Chapter 13 debtors the right to cure and reinstate accelerated debts on the residences of Chapter 13 debtors but simply chose not to do so. Furthermore, section 103, which deals with the applicability of chapters, does not make § 1124 applicable to proceedings under Chapter 13.
 

 Based on this reasoning, we conclude that Section 1322(b)(3) is not applicable to the residential note held by Houston First and, as a result, is not available to Grubbs to allow him to cure his pre-petition default on that note.
 
 [1]
 
 The only situation in which the rights of a holder of a claim secured by an interest in real property that is the debtor’s principal residence may be modified is one which satisfies Section 1322(b)(5).
 

 Grubbs contends that his default on Houston First’s note can be cured under Section 1322(b)(5). Section 1322(b)(2) makes it clear that a plan may not modify the rights of a secured claimant whose sole security is a mortgage on real estate that is the debtor’s principal residence. Section 1322(b)(5) is an explicit, but limited, exception to Section 1322(b)(2) and provides that a Chapter 13 plan may cure defaults on a claim “on which the last payment is due after the date on which the final payment under the plan is due.” Section 1322(b)(5) is therefore not available to cure defaults on debts which are due in full at the time the Chapter 13 petition is filed.
 

 Here, Grubbs stipulated that when the debt was accelerated by Houston First, the note which it held became immediately due and payable under state law,
 
 [2]
 
 therefore admitting for the purposes of this litigation, that Houston First’s claim is not one “on which the last payment is due after the date on which the final payment under the plan is due.” The debt owed Houston First was owing long before the last payment under Grubbs’ Chapter 13 plan would be due. Because he cannot satisfy the requirements of Section 1322(b)(5), Grubbs may not cure the default through the means provided by that section.
 

 Additionally, Grubbs asserts for the first time on appeal that he is allowed to cure his pre-petition default pursuant to Section 1322(b)(10) which allows the plan to “include any other appropriate provision not inconsistent with this title.” Grubbs did not make such a claim below. Because a party cannot raise a new theory on appeal which was not raised below, we are not obliged to consider this issue.
 
 Delesdernier v. Porterie,
 
 666 F.2d 116, 124-25 (5th Cir.),
 
 cert.
 
 denied, - U.S. -, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982);
 
 Jackson v. United States Postal Service,
 
 666 F.2d 258, 260-61 (5th Cir.1982);
 
 Capps v. Humble Oil & Refining Co.,
 
 536 F.2d 80 (5th Cir.1976). The short answer to his contention, nevertheless, is that a provision which would cure his de- • fault is, because of the operation of Section 1322(b)(5), not appropriate here and is also inconsistent with this title.
 

 In conclusion, the only situation in which the rights of a holder of a claim secured by an interest in real property that is the debtor’s principal residence may be modified by a Chapter 13 plan is one which satisfies the requirements of Section 1322(b)(5). Because the entire balance of the note in this case was legally due when Grubbs’ Chapter 13 petition was filed, Section 1322(b)(5) does not apply and Grubbs’ Chapter 13 plan cannot be confirmed.
 

 III.
 

 The Second Circuit, in
 
 Di Pierro v. Taddeo (In re
 
 Taddeo), 685 F.2d 24 (Bkrtcy.2d
 
 *698
 
 Gir.1982), has reached the opposite conclusion in construing Section 1322(b). It is the Second Circuit’s view that the concept of “cure” in Section 1322(b)(5) contains the broad power to deaccelerate a secured long-term residential debt accelerated prior to the filing of a Chapter 13 petition. It is the alternative view of the Second Circuit that the ban on “modification” of the rights of mortgagees in Section 1322(b)(2) does not limit a debtor’s exercise of his curative powers under either Sections 1322(b)(3) or (b)(5); in other words, to abrogate the acceleration provisions of the mortgage does not “modify” the rights of the mortgagee. We believe, with deference, that this is a plainly incorrect reading of the statute.
 

 The legislative history of Section 1322 demonstrates that it was intended that a claim secured by the debtor’s principal residence would be treated with under 1322(b)(5). 124 Cong.Rec.S. 17,423 (Oct. 6, 1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 6550. From the language of 1322(b)(5) it is obvious that Congress anticipated Chapter 13 plans would provide for the curing of defaults on mortgages as well as for the maintenance of current payments thereon. The language of Section 1322(b)(5), however, states clearly, unambiguously, and undeniably that a default may be cured within a reasonable time on a secured claim, but
 
 only
 
 on a secured claim “on
 
 which the last payment is due after the date on which the final payment under the plan is due.”
 
 Thus, ah application of this language, rather than allowing deacceleration, prohibits pre-petition accelerated debts, the full payment of which is due before the filing of the petition, from being cured. Deacceleration of such a debt clearly constitutes a “modification” of the mortgagee’s rights banned under 1322(b)(2) and beyond the exception to that ban provided in 1322(b)(5). Pre-petition deacceleration, therefore, is prohibited by the terms of the statute and must be interpreted as separable from the definition of “cure,” which may be, under the terms of the statute, allowed.
 

 Here the note held by Houston First was accelerated before Grubbs filed his Chapter 13 petition. When the note was accelerated the maturity date was changed from the future to the present.
 
 General Motors Acceptance Corp. v. Uresti,
 
 553 S.W.2d at 663. The acceleration caused the note, by its terms, to become immediately due; and by the terms of the note and under state law Grubbs lost the right to pay all past due installments and to reinstate the original maturity date.
 
 Iden v. Lippard,
 
 166 S.W.2d at 187. The accelerated debt was substituted for the installment debt of the mortgage. Consequently, the maturity date of the last payment under the note did not extend past the date for the plan’s last payment. As a result, the default, by the explicit terms of 1322(b)(5), was not a default which could be cured and the payments maintained under a Chapter 13 plan. On the other hand, if there had been no acceleration, the curing of the default and maintenance of payments may have been allowed.
 

 We also disagree with the Second Circuit’s conclusion that the power to “cure any default” granted in Sections 1322(b)(3) and 1322(b)(5) is not limited by the ban against modifying the rights of a holder of a claim secured by a security interest in real property that is the debtor’s principal residence. The Second Circuit’s conclusion was based on the fact that it did not consider the curing of a default to be the “modification of a claim.”
 

 In the first place, the analysis of the Second Circuit is built from an erroneous premise. Section 1322(b)(2) does not speak of “modification of claims.” It addresses modification of the
 
 rights of the holders
 
 of secured claims. These are quite different considerations and because
 
 In re Taddeo
 
 discusses only “modifications of claims,” its analysis of the curing and deacceleration of a default as not being a “modification of a claim” has little bearing on the modification of the
 
 rights
 
 of the holders of secured claims.
 

 Secondly, the plain language of Section 1322(b)(5)’s preface, “notwithstanding paragraph (2)” indicates to us beyond peradventure that the cure of a default is, within the
 
 *699
 
 meaning of the statute, a modification of the rights of a residential mortgagee unless the cure is permitted by the terms of the mortgage. Similarly, there can be no doubt that, as a practical matter, nullifying rights of default and acceleration under the mortgage modifies the rights of the mortgagee. To allow cure of Grubbs’ default in this case would terminate Houston First’s right immediately to have the total amount of the indebtedness paid in full. Requiring Houston First to postpone its right to have its money immediately and allowing Grubbs the opportunity (with uncertain success) to cure his default by paying the indebtedness over the period of the plan would obviously be a modification of Houston First’s substantial rights under the note which would be precluded by Section 1322(b)(2).
 

 Thus, notwithstanding the reasoned approach of the Second Circuit, the naked weakness of the holding of
 
 In re Taddeo
 
 is that it ignores the plain meaning of the lucid words of the statute. It does not, indeed cannot to our satisfaction, explain away those words that Congress put there.
 

 Had Congress intended that a debtor, pursuant to Sections 1322(b)(2) and 1322(b)(5), could cure a secured residential debt accelerated prior to the filing of a Chapter 13 petition, it was perfectly capable of stating its intentions. Instead, Congress provided generally in (b)(2) that the rights of these mortgagees could not be modified; then, in (b)(5), recognizing that curing a default was a modification of rights, provided a limited, rather than a broad, exception to (b)(2). We are unwilling to ignore the express as well as the contextual reading of the statute and come up with a given interpretation because we think it happens to be more sensible and more just to the bankrupt. If Congress wishes, it may certainly do so.
 

 For the above and foregoing reasons, the decision of the district court is
 

 AFFIRMED.
 

 *
 

 In accordance with court policy, this opinion, being one which initiates a conflict with the rule declared in another circuit, was circulated before release to the entire court, and rehearing en banc was voted by a majority of the judges in active service.
 

 [1]
 

 . Similar conclusions have been reached in
 
 Western and Southern Life Insurance Company v. Soderlund (In re
 
 Soderlund),
 
 18 B.R.
 
 12 (D.C.S.D.Ohio 1981), rev’g 7 B.R. 44 (Bkrtcy.S.D.Ohio 1980);
 
 In re Allen,
 
 17 B.R. 119 (Bkrtcy.N.D.Ohio 1981);
 
 In re Jenkins,
 
 14 B.R. 748 (Bkrtcy.N.D.Illinois 1981).
 

 [2]
 

 . When the note was accelerated the maturity date was changed from the future to the present.
 
 General Motors Acceptance Corp. v. Uresti,
 
 553 S.W.2d 660, 663 (Tex.Civ.App.— Tyler 1977, writ refd n.r.e.). The acceleration caused the note to become immediately due; upon acceleration Grubbs lost the right to pay all past-due installments and to reinstate the original maturity date.
 
 Iden v. Lippard,
 
 166 S.W.2d 185, 187 (Tex.Civ.App.—Waco 1942, no writ).