### In re Ann L. MALONEY, Jack C. Maloney, Debtors.

### Bankruptcy No. 83–0055.

United States Bankruptcy Court,
D. New Hampshire.

Feb. 23, 1984.

William S. Gannon, Manchester, N.H., for debtors.

John Michels, Londonderry, N.H., trustee.

Luke S. O'Neill, Jr., Manchester, N.H., for Metropolitan Mortg. Corp.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case is before the court on a Motion To Dismiss Or Convert filed by the Chapter 13 trustee. Separate adversary proceedings are also pending in which the issue has been raised as to whether Metropolitan Mortgage Corporation (hereinafter "Metropolitan") shall be further restrained from proceeding to foreclose its mortgage upon the debtors' residence. Since the issues in both matters are interrelated this opinion will set out the court's findings and conclusions as to both. The court also reaffirms as pertinent to both matters the Findings Of Fact entered in the adversary proceedings on January 9, 1984.

The debtors filed their Chapter 13 petition on January 31, 1983 in this court. On July 26, 1979 the debtors borrowed $26,-000.00 from Metropolitan secured by a mortgage on their principal residential real property. Under the terms of the note and mortgage they were to make 36 monthly interest payments of $390.00, and to make the principal repayment of $26,000.00 by a balloon payment on or before July 26, 1982.

Several interest payments were made by the debtors but for various reasons the note went into default by the end of 1979 and Metropolitan elected to accelerate the whole of the principal sum immediately due and payable.

The debtors were able to hold off foreclosure by Metropolitan by various means over the next three years—including a prior Chapter 13 proceeding in this court which ultimately was dismissed by Bankruptcy Judge Betley by order entered on November 24, 1981. This order was affirmed by the United States Bankruptcy Appellate Panel for the First Circuit on December 15, 1982.

On January 5, 1983 Metropolitan commenced proceedings to foreclose its mort-

gage and advertised a foreclosure sale for February 4, 1983. This sale was stayed by the filing on January 31 of this new Chapter 13 proceeding.

The central issue presented in this case stems from the fact that the mortgage indebtedness had already matured under its own terms some six months before the commencement of these proceedings and involved the debtors' principal residence.

Unlike prior law the Bankruptcy Code of 1978 specifically limits the power of the court to approve a Chapter 13 plan in the circumstances. Section 1322(b)(2) of the Code provides that a Chapter 13 plan may:
    ... modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims ..." (emphasis supplied)

It is therefore clear that Congress in the 1978 Code intended and did prohibit the use of a Chapter 13 plan to modify the rights of mortgagees holding liens upon debtors' residential property.

Since the record in this case establishes that the debtors have no capability to immediately pay the outstanding secured indebtedness, and in their Chapter 13 plan provide for payment of the same in monthly installments over a three-year period, the trustee's motion to dismiss would necessarily have to be granted if the Code does not permit any modification of Metropolitan's rights as a secured creditor. This would of course also terminate any continuing stay against foreclosure imposed by these proceedings.

The code does provide in § 1322(b)(3) that a Chapter 13 plan can provide for the "curing or waiving of any default" and provides further in § 1322(b)(5) that the plan may:
    "... notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

In situations in which the mortgage debt has not matured in regular fashion prior to the Chapter 13 filing, but where the mortgagee has accelerated a debt by virtue of default in payment by the debtor, the courts are in conflict as to whether a subsequent Chapter 13 proceeding can "de-accelerate" the mortgage debt and provide for its continued payment in monthly installments pursuant to the Chapter 13 plan. See *Grubbs v. Houston First Am. Sav. Assoc.,* 718 F.2d 694, 9 C.B.C.2d 478 (5th Cir. 1983); and *Di Pierro v. Taddeo,* 685 F.2d 24, 6 C.B.C.2d 1201 (2nd Cir.1982). The principal issue in such decisions has been whether a pre-bankruptcy accelerated mortgage debt is barred from the § 1322(b)(5) relief because the entire debt was due before bankruptcy and therefore does not come within the "last payment ... due after ... final payment under the plan is due" language of that subsection.

In the present case, however, the mortgage debt in question matured, even apart from acceleration, by its own terms prior to the institution of these Chapter 13 proceedings. The issue therefore resolves itself down to the more refined question as to whether the "curing or waiving of any default" language of subsections (b)(3) and (5) of section 1322 apply in any manner to the situation of a pre-bankruptcy matured mortgage debt on the debtors' residence.

This narrower question is apparently a matter of first impression under the Bankruptcy Code and depends upon what Congress meant by using the words "cure" and "default" in the statutory provisions. In a general sense the failure of a mortgagor to pay back a mortgage debt when it matures can be referred to as a "default" in ordinary usage. However, the use of the concept "cure" in the statute has the more specific connotation of dealing with arrearages in a transaction which has gone into default in mid-term and in which the arrearages are paid off and the pre-acceleration payment schedule is resumed. See

878

*Grubbs,* supra, and *Taddeo,* supra, and cases cited therein.

On balance, the court concludes that if subsection (b)(3) and (5) of section 1322 were construed to permit a Chapter 13 plan to "cure" a matured mortgage debt, by in effect creating a new payment schedule, such action would clearly involve "modifying" the rights of the mortgagee. Since Congress explicitly prohibited modification of the rights of mortgage holders on the debtors' principal residence in subsection (b)(2) of the statute involved, for whatever reason, this court is forced to conclude that a Chapter 13 plan under the new Code cannot be used to resurrect and "reschedule" payments upon an affected mortgage debt that matured by its own terms prior to the Chapter 13 proceedings.

Accordingly, the trustee's motion to dismiss these Chapter 13 proceedings will be granted by separate order, and the pending adversary proceedings will be rendered moot.