**JACKSON FIREFIGHTERS ASSOCIATION LOCAL 87, J.D. Wright, Johnny Bass, Larry Iles and Jim Gilliland, Individually and on behalf of all others similarly situated, Plaintiffs-Appellants,**

v.

**CITY OF JACKSON, MISSISSIPPI, A Municipal Corporation, Dale Danks, Mayor of the City of Jackson, Nielson Cochran, Fred Johnson, Commissioners of the City of Jackson, Individually and in their official capacities, Defendants-Appellees.**

No. 83–4749

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 16, 1984.

---

Cupit & Maxey, John L. Maxey, II, Jackson, Miss., for plaintiffs-appellants.

Timmie Hancock, Jackson, Miss., for defendants-appellees.

Before RUBIN, HIGGINBOTHAM and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The equal protection clause does not require that all public employees whenever employed receive the same pension and disability benefits. While providing the benefits promised employees who began and have continued to work in the expectation

of receiving specified pensions and disability benefits, a governmental unit may reduce its expenditures by lowering the level of benefits provided new employees without denying them equal protection of the laws.

A class of firemen and policemen employed by the City of Jackson, Mississippi, after June 30, 1976, challenge the validity and constitutionality, under both state and federal constitutions, of the system under which the pension benefits paid to members of the class will be less than those paid to persons employed before that date. On cross motions for summary judgment, the district court found that the state statute was properly construed to permit the municipal action and that it passed both state and federal constitutional muster. We affirm.

I.

The first statute allowing Mississippi municipalities to provide any type of retirement system for its employees, adopted in 1930,[1] authorized certain municipalities to create through voter approval a retirement and disability fund for its firemen and policemen. Because they are codified in Article V of the Mississippi Code, plans authorized by this statute are called Article V plans and funds set aside to pay these benefits are called Article V funds.

In 1948, the Mississippi legislature authorized certain municipalities to create and maintain a fund known as the "City Employees Retirement Fund";[2] these plans were codified in Article I and consequently became known as Article I plans. In contrast to Article V plans, Article I plans may extend benefit coverage to all municipal employees.[3]

Plans adopted under Article I, the "Public Employees Retirement System of Mississippi," were financially sound, and the benefits promised most municipal and state employees were likely to be received. Concern, however, developed over the actuarial soundness of the Article V plans, the "Disability and Relief Fund for Firemen and Policemen." The Mississippi legislature therefore authorized an actuarial study in 1975. This study found the Article V plans for firemen and policemen to be in fact actuarily unsound. It found the assets of the funds to be "negligible in relation to actuarial requirements" and recommended that "corrective actions be taken as soon as possible." One of the recommendations of the actuarial study was to "[c]lose the present local systems, thereby limiting the accruing liabilities to present employees" with reduced benefits to new employees.

In 1976, as part of a program in which several of the laws dealing with the municipal retirement systems were amended,[4] the legislature amended §§ 21–29–17 and –237, dealing respectively with eligibility for benefits under Article I and V plans. The provisions of Article I were amended to permit a municipality to enter into an agreement with the public employees' retirement system of Mississippi whereby "all new firemen and policemen employed or reemployed after the effective date" of the agreement would be included in the Article I plan with the same benefits as other municipal employees.[5] The Article V

1. Act of April 22, 1930, ch. 55, 1930 Miss. Laws 93 (codified as amended at Miss.Code Ann. §§ 21–29–201 to 301) (1976 & Supp.1983).

2. Act of March 31, 1948, ch. 386 § 1, 1948 Miss. Laws 600 (codified as amended at Miss.Code Ann. §§ 21–29–1 to –55 (1972 & Supp.1983)).

3. See § 21–29–17 (Supp.1983).

4. Act of May 22, 1976, ch. 463, 1976 Miss. Laws 732.

5. Miss.Code Ann. 21–29–17 as amended reads in part:

(c) In lieu of the other provisions of this article, any municipality operating under the provisions of this article on March 1, 1976, may, by a resolution duly adopted and entered upon its minutes, enter into an agreement with the public employees' retirement system of Mississippi whereby all new firemen and policemen employed or reemployed after the effective date of such agreement shall be included in the provisions of such agreement for retirement purposes to the same extent as are other employees covered by the employees' retirement system.

plan provisions were amended to provide that policemen employed after adoption of a municipal resolution including them in an Article I plan would not become members of the municipal Article V plan.[6]

The City of Jackson had adopted an Article V plan covering its firemen and policemen in 1930. On June 30, 1976, the Jackson City Council adopted a resolution that put firemen and policemen thereafter employed in an Article I plan. It had not, however, previously adopted an Article I plan for its other municipal employees.

The plaintiffs contend that: (1) The 1976 statute applies in terms only to municipalities "operating under the provisions of this article;" the words "this article" refer to Article I and Jackson had never adopted an Article I plan; therefore, the 1976 statute does not authorize the action taken by the city; (2) the 1976 statute adopted a prior statute by reference, in violation of the Mississippi Constitution; and (3) the City ordinance created a class of employees who receive inferior treatment without rational basis and hence violates the equal protection clause of the fourteenth amendment to the United States Constitution. We consider these arguments in turn.

## II.

■ A Mississippi municipality, as a creature of the state, has only those powers expressly or impliedly granted to it by the legislature. Any action by a municipality in conflict with or in contravention of a state statute is void.[7]

■ The district court found authority for Jackson's action in "the true effect and meaning of the 1976 amendment." § 21–29–237, as amended, is not limited by the words, "operating under provisions of this article [Article I]." Only a few municipalities—those having a population of 21,000 or more or those "bordering tide water" and having a population of more than 15,000—were empowered to adopt Article I plans. If the 1976 legislation were limited to these municipalities, a few municipalities would be eligible to take advantage of the 1976 provisions, even though the coverage of other municipal plans is far greater. Such a construction would severely limit the 1976 authority and render it almost meaningless. It would require those cities having an Article V plan but not presently having an Article I plan to submit to a referendum while a limited number of municipalities might adopt an Article I plan by resolution of the municipal governing body. This could not have been intended.

If the amendments adopted in 1976 are construed together, the legislative intention becomes clear: the amended version of § 21–29–237 states, "firemen and policemen hired after the adoption of a resolution ... shall not become members of the disability and relief fund for firemen and policemen." This does not prescribe the plan in which they become members. That prescription is provided by subsection (c) of 21–29–17, which gives a fuller description of the "resolution." It is a resolution, "duly adopted and entered upon the municipality's minutes, to enter into an agreement with the Public Employees' Retirement System of Mississippi whereby all new firemen and policemen employed or reemployed after the effective date of the resolution shall be included in the provisions of such agreement for retirement purposes to the same extent as are other employees covered by the public employees' retirement system." Thus construed, § 21–29–17(c) complements and does not limit § 21–29–237.

## III.

■ The Mississippi Constitution provision prohibits amendment of a statute by

---

6. Miss.Code Ann. § 21–29–237 as amended reads in part:

All firemen and policemen who are employed in the said fire department or police department after adoption of a resolution by the municipality in accordance with the provisions of subsection (c) of section 27–29–17 shall not become members of the disability and relief fund for firemen and policemen.

7. See, e.g., City of Jackson v. Luckett, 336 So.2d 776, 778 (Miss.1976); Hattiesburg Firefighters Local No. 184 v. City of Hattiesburg, 263 So.2d 767, 769–70 (Miss.1972).

reference to its title only, and requires the section amended to be set forth at length.[8] Prior to this appeal, however, the plaintiffs never suggested that the statute violates the Mississippi Constitution in this regard. Because the state constitutional argument was not presented to the district court, we decline to address it. *Cf. Grubbs v. Houston First American Savings Association*, 718 F.2d 694, 697 (5th Cir.1983); *Delesdernier v. Porterie*, 666 F.2d 116, 124–25 (5th Cir.), *cert. denied*, 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982); *Capps v. Humble Oil & Refining Co.*, 536 F.2d 80, 82 (5th Cir.1976).

## IV.

The statute involves the payment of economic benefits to municipal employees. In assessing the validity of the city's disparate treatment of those employed before a certain date and those employed after, we look to see whether the distinction has a rational relationship to a legitimate state interest.[9] "In accordance with this comparatively relaxed standard of review for social and economic regulation, the decisions of the Supreme Court 'presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.' " *Anderson v. Winter*, 631 F.2d 1238, 1240 (5th Cir.1980), *quoting New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). The challenger must show that the classification is irrational or arbitrary. *Seoane v. Ortho Pharmaceuticals, Inc.*, 660 F.2d 146, 150 (5th Cir.1981).

A court should, therefore, not set aside the classification created by a state statute relating to economic matters "if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).[10] The state legislature in this case had not only a legitimate interest but a duty to perform in preserving the financial integrity of the retirement and disability programs administered by it or its political subdivisions.

Federal courts may not establish the fiscal priorities for the several states. "The Fourteenth Amendment does not give courts the power to impose upon a legislature their conceptions of what wise social and economic policy would be." *Anderson v. Winter*, 631 F.2d at 1241. It was rational for the legislature to conclude that lowering of benefits was necessary to ensure the economic integrity of the municipal plans. Having reached the conclusion that lower benefits were necessary, the legislature was not required to renege on its promise to those who had begun work when higher benefits were in effect. The decision to lower benefits only for new employees was reasonable, and one within the constitutional power of the state legislature.

For these reasons, the judgment is AFFIRMED.

---

8. Miss. Const., § 61 states:

   No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length.

9. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973); *Pappanastos v. Board of Trustees*, 615 F.2d 219, 220–21 (5th Cir.1980).

10. *See also McDonald v. Board of Elections*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969) ("statutory classifications will be set aside only if no grounds can be conceived to justify them). *But see Jimenez v. Weinberger*, 417 U.S. 628, 633, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974) (disposing of a hypothetical purpose because "no evidence" supported it); *Schweiker v. Wilson*, 450 U.S. 236, 244, 101 S.Ct. 1074, 1088, 67 L.Ed.2d 186 (Powell, J., dissenting) (Court should be skeptical of "post hoc hypotheses about legislative purpose, unsupported by the legislative history").