**In the Matter of Clifford and Kathy BOSTEDER, Debtors.**

**Robert and Nancy KNEZ, Movants,**

**v.**

**Clifford and Kathy BOSTEDER, Respondents.**

**Bankruptcy No. 3–82–03540.**

United States Bankruptcy Court, S.D. Ohio, W.D.

April 22, 1986.

Willis O. Serr, II, Dayton, Ohio, for movants, Smith & Schnacke, L.P.A.

Richard L. Buchanan, Dayton, Ohio, for respondents, James R. Kirkland and Associates.

George W. Ledford, trustee, Englewood, Ohio.

## DECISION AND ORDER GRANTING MOVANTS' MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(1)

THOMAS F. WALDRON, Bankruptcy Judge.

This is a case arising under 28 U.S.C. § 1334(a) and having been referred to this court is determined to be a core proceeding under 28 U.S.C. § 157(b)(2)(G) in which the creditor-movants, Robert and Nancy Knez, seek relief from the automatic stay (11 U.S.C. § 362(a)) pursuant to 11 U.S.C. § 362(d) in order to institute foreclosure proceedings, alleging as cause a default by the debtor-respondents, Clifford and Kathy Bosteder, on a balloon payment due on a promissory note secured by a mortgage on real property that is the Bosteders' principal residence.

This matter is before the court on the creditors' motion for relief from stay; briefs of the creditors and debtors; written stipulations by the parties; the evidence and arguments presented at the hearing on the motion; and supplemental post-hearing briefs by the parties.

### I.  FACTS

The parties have stipulated that there are no material facts in dispute. The court finds the following relevant facts in this case. On November 28, 1981, Robert and Nancy Knez sold to Clifford and Kathy Bosteder real estate to be used as the Bosteders' principal residence for the price of eighty-two thousand nine hundred dollars ($82,900). The Bosteders gave the Knezes a down payment of seven thousand dollars ($7,000) and executed a promissory note to the Knezes in the amount of seventy-five thousand nine hundred dollars ($75,900), at an interest rate of twelve (12) per cent a year. The note provided, in part, that beginning on December 28, 1981, the Bosteders were to pay the Knezes twelve (12) monthly installments of seven hundred eighty-one dollars ($781) each. The last installment was to be on November 28, 1982, at which time the Bosteders were to pay the Knezes "the balance of principal necessary for Maker [Bosteders] to assume Payee's [Knezes'] existing first mortgage, plus all interest due thereon." [1] The Bosteders failed to make the balloon payment due on November 28, 1982. The parties have stipulated that the amount due was approximately fifteen thousand dollars ($15,000).

On December 21, 1982, the Bosteders filed a joint petition under Chapter 13 of the Bankruptcy Code. On their schedules, they listed a debt to the Knezes of seventy-six thousand dollars ($76,000) secured by a mortgage on real estate with a monthly payment of seven hundred eighty-one dollars ($781). This monthly payment was two months in default. No mention was made of any balloon payment or that their debt in connection with this real estate was to be completed in other than by monthly payments. The Bosteders' Chapter 13 plan proposed to pay the Knezes seven hundred eighty-one dollars ($781) a month at ten (10) per cent annual interest and to cure the two-month arrearage. No objections were filed to the plan. The court, the Honorable Ellis W. Kerr presiding, confirmed the plan on February 9, 1983. Neither party provided the court with the terms of the promissory note or informa-

---

1. This prior mortgage is owed by the Knezes to a person not a party to this proceeding.

tion concerning the debtors' prepetition default under the terms of the note.[2]

Subsequently, the Bosteders failed to make the monthly payments of seven hundred eighty-one dollars ($781.00) and the Knezes filed a motion for relief from stay. That motion was dismissed, without prejudice, following the Bosteders' submission of a modified plan curing the arrearages. The Knezes did not object to the modified plan. During those proceedings, again, the default on the required balloon payment was not brought to the court's attention by either of the parties or their counsel. On April 5, 1984, the parties agreed in writing between themselves to extend the due date for the balloon payment to November 28, 1984.

On April 16, 1984, the Knezes for the first time filed a proof of claim. A second proof of claim was filed on September 12, 1984. It showed that they were owed seventy-five thousand fourteen dollars and thirty-five cents ($75,014.35), plus taxes of approximately one thousand dollars ($1,000) per year. Attached to each proof of claim was a copy of the mortgage and a document labelled "Exhibit A" which stated that:

1. This mortgage is subject to a certain mortgage originally granted by ROBERT LOUIS FISCHER of Montgomery County, Ohio to WESTERN SAVINGS ASSOCIATION, dated March 15, 1978 ... which constitutes a first mortgage lien on the said described premises....It is specifically hereby provided that the Mortgagor herein is not assuming any liability for payment for the indebtedness secured by such prior mortgage, it being

specifically the duty of the Mortgagee herein to continue the payments therefor.

Still no information was provided to the court by either party concerning the balloon payment due.

The balloon payment was not paid by the extended date of November 28, 1984. On June 21, 1985, the Knezes filed the present motion for relief from stay.

## II. ISSUE PRESENTED

Is there "cause" under 11 U.S.C. § 362(d)(1) to grant creditors' motion for relief from stay when the debtors' confirmed Chapter 13 plan did not disclose or propose to pay according to its terms a balloon payment obligation secured by only a security interest on real property that is the principal residence of the debtors, but instead proposed to pay the balloon payment debt in monthly payments over the sixty (60) months of the debtors' plan?

## III. ARGUMENTS OF THE PARTIES

The movants argue that they should be granted relief from the stay because the respondents' default on the balloon payment subsequent to the negotiated extension agreement constituted "cause" under 11 U.S.C. § 362(d)(1). They further argue that 11 U.S.C. § 1322(b)(2) prohibits a Chapter 13 plan from modifying the rights of a secured party when the party holds only a security interest in real property that is the debtor's principal residence, and that 11 U.S.C. § 1322(b)(5) does not permit a cure of a mortgage that has not been brought to maturity by virtue of an acceleration clause.[3]

---

2. A proof of claim on behalf of the Knezes for the arrearages of $1,562.00 was not filed until April 16, 1984, and it did not contain the note, which was not filed in this case until the parties attached a copy of it to the stipulation filed February 22, 1985.

3. (b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b) (1982)

The respondents argue that relief from the stay should be denied because they are current on their monthly payments under the plan and have insured the property, thus adequately protecting the creditors. They argue that the Knezes' voluntary extension of the due date for the balloon payment on two separate occasions amounted to a waiver of the Knezes' rights under the original note, and to foreclose now would irreparably harm the debtors in achieving their fresh start under Chapter 13, particularly since they have paid a large amount in interest. Finally, the respondents argue that the movants are barred by the doctrine of laches from raising their claim at this late date. The respondents urge the court to stay the balloon until after the plan is completed or in the alternative modify the balloon in accordance with the payments made by the debtors in order to permit them to seek refinancing of their loan. The respondents did not address the § 1322(b) issue.

## IV. OPINION OF THE COURT

In contrast to otherwise allowable provisions of plans proposed by individuals pursuant to 11 U.S.C. §§ 1301–1330, which attempt to protect the existing and potential assets of debtors while they reorganize their personal debts, H.R. No. 595, 95th Cong., 1st Sess. 116–18 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News pp. 5787, 6076–79, 11 U.S.C. § 1322(b)(2) provides that while a Chapter 13 plan may modify the rights of holders of secured claims, it specifically excludes from such modifiable claims, those "secured only by a security interest in real property that is the debtor's principal residence." The Sixth Circuit Court of Appeals has read the legislative history behind this section as indicating a deliberate

> policy to encourage the increased production of homes and to encourage private individual ownership of homes as a traditional and important value in American life. Congress had to face the reality that in a relatively free society, market

forces and the profit motive play a vital role in determining how investment capital will be employed. Every protection Congress might grant a homeowner at the expense of the holders of security interests on those homes would decrease the attractiveness of home mortgages as investment opportunities. And as home mortgages decrease in attractiveness, the pool of money available for new home construction and finance shrinks.

*Federal Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1434 (6th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). *Accord Seidel v. Larson (In re Seidel)*, 752 F.2d 1382, 1386–87 (9th Cir.1985); *Grubbs v. Houston First American Savings Association*, 730 F.2d 236, 246 (5th Cir.1984) (en banc).

■ Given the clear statutory language against modification of the rights of lenders whose only security is in the real property that is the debtor's principal residence, *In re Seidel*, 752 F.2d at 1384–85, it is evident that had the judge who entered the confirmation orders been aware that the respondent-debtors' plan reflected a disregard for the terms of the promissory note and that a default on the balloon payment had matured prepetition, the plan, since it modified the lenders' rights, would not have been confirmed. *Western Equities, Inc. v. Harlan (In re Harlan)*, 783 F.2d 839, 840 (9th Cir.1986).

The court finds this case clearly distinguishable from those holding that a plan providing for payments of a mortgage default that was accelerated by the lender prepetition is not a modification under § 1322(b)(2). *E.g., In re Glenn*, 760 F.2d 1428; *Clark v. Federal Land Bank of St. Paul (In re Clark)*, 738 F.2d 869 (7th Cir. 1984); *Grubbs*, 730 F.2d 236; *DiPierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2d Cir.1982); *In re Gwinn*, 34 B.R. 936 (Bankr.S.D.Ohio 1983). The rationale behind those holdings derives from the distinction between "modification" under

§ 1322(b)(2) and "cure" under § 1322(b)(3), (5). While subsection (b)(2) limits modification of rights, subsection (b)(3) does not limit the curing or waiving of defaults and subsection (b)(5) merely provides time limits on the curing of defaults.

The earliest Circuit Court of Appeals to announce its position on allowance of a Chapter 13 plan providing for the deceleration of a prepetition mortgage default was the Second Circuit in *In re Taddeo*, 685 F.2d 24;

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "deaccelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code.
>
> . . . .
>
> Secondly, we believe that the power to "cure any default" granted in § 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in § 1322(b)(2) because we do not read "curing defaults" under (b)(3) or "curing defaults and maintaining payments" under (b)(5) to be *modifications* of claims.
>
> It is true that § 1322(b)(5)'s preface, "notwithstanding paragraph (2)," seems to treat the power to cure in (b)(5) as a subset of the power to modify set forth in (b)(2), but that superficial reading of the statute must fall in the light of legislative history and legislative purpose. The "notwithstanding" clause was added to § 1322(b)(5) to emphasize that defaults in mortgages could be cured notwithstanding § 1322(b)(2). *See* 124 Cong. Rec.H 11,106 (Sept. 28, 1978); S. 17,423 (Oct. 6, 1978). But the clause was not necessary. The Senate protected home mortgages from *modification* in its last bill, S. 2266, 95th Cong., 2d Sess.; it evinced no intent to protect these mortgages from *cure. Cf. Hearings on S. 2266 Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary,* 95th Cong., 1st Sess. 836 (1977) (Statement of Charles A. Horsky, Chairman, National Bankruptcy Conference (S. 2266 "is completely unclear as to whether the plan can provide for the curing of defaults and the making of current payments.") Indeed, earlier Senate bills along with House bills and the present statute listed the power to cure and the power to modify in different paragraphs, indicating that the power to cure is different from the power to modify. Testimony submitted on behalf of secured creditors distinguished between modifying a claim (by reducing payments due thereon) and curing a default (and maintaining those payments). *See Hearings Before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary,* 94th Cong., 1st Sess. 1027 (Statement of Walter W. Vaughan on behalf of the American Bankers Association) *Hearings Before the Subcommittee on Improvements in the Judicial Machinery of the Senate Committee on the Judiciary,* 94th Cong., 1st Sess. 130 (*idem* ).

*Id.* at 26–28.

The view that the power to cure does not include the power to modify is even more pronounced when the cure involves a real estate mortgage that does not involve the customarily presented accelerated mortgage situation. *See In re Miller,* 53 B.R. 100 (Bankr.S.D.Ohio 1985) (confirmation denied as an impermissible modification of a contract to sell property where a plan provided for the debtor to purchase the secured creditor's interest within the sixty (60) month time-frame for the plan); *In re Hamilton,* 51 B.R. 550, 553 (Bankr.M.D. Fla.1985) (confirmation denied as an imper-

missible modification of a contract where a plan provided for the debtor to cure a debt fully matured by its own terms prepetition by the device of making the last payment on the mortgage due after the last date for final payment under the plan as if the original debt constituted a long-term debt); *In re Maloney,* 36 B.R. 876 (Bankr.D.N.H. 1984) (motion to dismiss granted where a plan attempted an impermissible modification of a contract by resurrecting and rescheduling payments on a mortgage debt that had matured by its own terms prepetition).

■ Specifically not within the cure provisions of § 1322(b)(5) are prepetition defaults involving balloon payments. In *Batt v. Fontaine (In re Fontaine),* 27 B.R. 614 (9th Cir.App. Panel 1982), the appeals panel granted relief from the automatic stay to a lender on the ground that the balloon payment which was due before the debtor filed bankruptcy was not a long-term debt under § 1322(b)(5) and thus could not be cured by means of a Chapter 13 plan. In *In re Seidel,* 752 F.2d 1382, the Ninth Circuit Court of Appeals denied confirmation to a Chapter 13 plan that proposed to pay off a note which had matured prepetition with sixty (60) monthly payments and a balloon payment at the end on the ground that the plan improperly modified the lender's rights by extending the time for payment beyond the original contract's terms. The court found the provisions of § 1322(b)(3), (5) inapplicable to a debt that in the absence of acceleration had matured according to its terms prior to the filing of a Chapter 13 petition. *Id.* at 1383, 1386. A new payment schedule is not a cure, but rather modifies the rights of the parties. *Id.* at 1383–84.

> "the plain meaning of 'cure' as used in § 1322(b)(3) and (5), is to remedy or rectify the default and restore matters to the *status quo ante." Clark,* 738 F.2d at 872; *Taddeo,* 685 F.2d at 26–27. When a debt has been accelerated, "cure" there-

fore results in the reinstatement of the original payment terms of the debt. But when a debt has already naturally matured—as in Seidel's case—"cure" as defined by these courts cannot aid the debtor, since reinstatement of the original terms of the debt will merely make the debt immediately due and payable. *Id.* at 1386.

■ Accordingly, regardless of whether this court considers the failure of the creditors either to object to the debtor's five (5) year plan before its confirmation on February 9, 1983, or to their agreement subsequently to an extension of the balloon payment to November 28, 1984, as waivers of their rights under the original promissory note, the effect of curing either the original 1981 or the subsequent 1984 default would be to require that the contract terms be reinstated and the balloon payment be due immediately.

In the *Seidel* case, the matter was brought to the court's attention prior to confirmation, and confirmation was denied. More recently, however, the Ninth Circuit Court of Appeals has addressed the issue of a balloon payment at the same procedural point as the case at bar. *In re Harlan,* 783 F.2d 839. In *In re Harlan,* the bankruptcy court confirmed, without objection, a Chapter 13 plan that did not reveal the debtor's duty under a deed of trust to make a subsequent balloon payment. Following default on that payment, the creditor sought relief from the automatic stay provisions of 11 U.S.C. § 362. The Ninth Circuit Court of Appeals held that the statutory mandate of § 1322(b)(2) to protect lenders of home mortgages could not be enforced in circumstances where the plan did not reveal the debtor's intention to disregard the terms of the note and the default was outside the terms of the plan. *Id.* at 840. It, accordingly, granted relief from the stay. It likewise recognized that the language of 11 U.S.C. § 1327(a) [4] would not bar the creditor's motion for relief from

---

**4.** 11 U.S.C. § 1327(a) (1982) provided, "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such

creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

the stay because the clear mandate of 11 U.S.C. § 1322(b)(2) would have prevented confirmation if all the information had been presented to the court in the original or modified plan of the debtors. *Id.* at 840–41.

 Similarly, we find there is cause under 11 U.S.C. § 362(d)(1) to grant creditors' motion for relief from stay. To permit otherwise would, at a minimum, discourage residential real estate sales in times when conventional financing was not available or feasible and thus thwart the announced Congressional policy supported by court decisions encouraging individual home ownership. We find the debtors' argument that they would be irreparably harmed by such action to be unpersuasive. While it may be insufficient comfort to the debtors that the funds they expended gave them only the temporary income tax advantages of interest and real property tax deductions and only the temporary occupancy of the real estate, had they disclosed in their plan the total terms of the debt, they would have received an appropriate judicial determination of their proposed plan at the time of the original confirmation. Further, the debtors who must have recognized when the creditors refused to grant a further extension and the matter was left for decision by the court that their position might not prevail have, nevertheless, continued to remain in their Chapter 13 plan and make their monthly payment to the Knezes.

The Bosteders have paid to the Chapter 13 Trustee the initial arrearage of one thousand five hundred sixty-two dollars ($1,562) and the additional sum of nineteen thousand five hundred twenty-five dollars ($19,525) through the date of this decision. The relief from stay granted by this decision is stayed for a period of thirty (30) days from the date of this decision to allow the Bosteders time to secure financing which will satisfy their remaining obligation to the Knezes. Jurisdiction of the parties and any disputes concerning the balance due the Knezes under the terms of the promissory note is retained by this court during this thirty (30) day period. If the Bosteders are unable to obtain financing sufficient to complete payment due the Knezes or the parties are unable to otherwise reach an agreement providing for a confirmable modification to the Chapter 13 plan, the Knezes are granted relief from the stay provisions of 11 U.S.C. § 362, effective thirty (30) days from the date of this decision and the order simultaneously entered.

SO ORDERED.