**In re Robert BAXTER, Jr., Debtor.**

**Bankruptcy No. 92–22230–JNF.**

United States Bankruptcy Court,
D. Massachusetts.

June 10, 1993.

Thomas G. Broderick, Braintree, MA, for Fleet Nat. Bank.

Leon Aronson, Boston, MA, for debtor.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matters before this Court are an objection by Fleet National Bank ("Fleet") to the Chapter 13 plan filed by Robert Baxter, Jr. ("Debtor") and a Motion to Dismiss or in the Alternative Motion for Relief from Automatic Stay ("Motion"). On January 25, 1993, Fleet filed its Motion with respect to a note and mortgage on the Debtor's principal residence that matured by its own terms prepetition and was in arrears in an amount in excess of $90,-000.00. Approximately three weeks later, the Debtor filed his Chapter 13 plan in which he proposed to pay Fleet its regular monthly payment outside his plan and $200.00 per month for 60 months toward the arrearages.

The Court conducted hearings on February 26, 1993 and March 5, 1993. At the conclusion of the March 5, 1993 hearing, the Court ordered the parties to submit briefs on all issues raised by the Motion and the Debtor's proposed plan. Following the March 5, 1993 hearing, the Debtor filed a Motion to Amend Chapter 13 Plan in which he proposed to pay Fleet outside his plan pursuant to "a (5) five year note ... amortized over a (15) fifteen year period." Fleet filed a Notice of Objection to the plan and the proposed amendment coupled with a memorandum of law in support of its Motion. The Debtor failed to file a brief in response to the Court's order. The Court has taken no action on the Motion to Amend.

## II. FACTS

Although the parties have not filed an agreed statement of facts, the material facts are not in dispute. On or about October 23, 1986, Debtor borrowed $55,000 from Fleet secured by an open-ended mortgage on his principal residence located at 305 Salem Street, Medford (the "Property"). The Debtor and his non-debtor spouse own the Property as tenants by the entirety. Debtor amended the note and mortgage on February 28, 1988 to increase the amount of the line of credit to a maximum principal sum of $80,000, with a maturity date of October 28, 1991. The mortgage matured and the full amount became due on October 28, 1991.

Debtor filed a Chapter 13 petition on December 1, 1992. At the time of the filing, the total amount due on Fleet's note and mortgage was $90,318.87. Debtor has failed to make postpetition payments to Fleet.

## III. DISCUSSION

 The issue before the Court is whether a Chapter 13 debtor can "cure" an unaccelerated residential mortgage that has matured by its own terms prior to the filing of a Chapter 13 bankruptcy petition. Fleet argues that 11 U.S.C. § 1322(b)(2) prohibits a Chapter 13 debtor from modifying the rights of a secured party when that party holds only a security interest in the debtor's principal residence. Fleet further contends that 11 U.S.C. § 1322(b)(5) does not permit a "cure" of a mortgage that has matured by its own terms prior to the filing of bankruptcy. The Debtor through his proposed plan apparently relies upon 11 U.S.C. § 1322(b)(3), which allows a Chapter 13 debtor to cure a default on a secured claim through payment under a Chapter 13 plan.[1]

---

1. Section 1322(b) provides in relevant part:
 (b) Subject to subsections (a) and (c) of this section, the plan may—
 (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, ...

 (3) provide for the curing or waiving of any default; ...
 (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured

Although the language of § 1322(b)(3) authorizes a debtor to cure a default on a secured claim by repayment under a Chapter 13 plan, this right is qualified by §§ 1322(b)(2) and (5). *In re La Brada*, 132 B.R. 512, 514 (Bankr.E.D.N.Y.1991). Section 1322(b)(2) prohibits a debtor from modifying the rights of a holder of a claim "secured only by a security interest in real property that is the debtor's principal residence," regardless of whether the claim is fully or partially secured. *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

In the present case, Debtor's principal residence is the only security for Fleet's mortgage note. Debtor, through his proposed plan, seeks to extend the fully matured note and amortize the amount due over a fifteen year period. This is an impermissible modification, as a plan which extends the time for payment of a note beyond the time originally contemplated by the parties has been held to "modify" the rights of the mortgagee in violation of § 1322(b)(2). *In re Seidel*, 752 F.2d 1382, 1384 (9th Cir.1985); *In re La Brada, supra*. In *Seidel*, the circuit court noted that § 1322(b)(2) was deliberately amended to protect home lenders, rather than home owners, by prohibiting home owners from modifying debts wholly secured by home mortgages. *Id.* at 1385. *See also Nobelman v. Amer. Sav. Bank, supra* (§ 1322(b)(2) safeguards lender's contractual rights by protecting the value of undersecured home mortgagee's secured claim). Before it was amended, subsection (b)(2) permitted a Chapter 13 debtor to modify the rights of any creditor. *Seidel*, 752 F.2d at 1385. The amendment, now embodied in the statute, reflects the legislative intent of preventing Chapter 13 debtors from invoking § 1322(b) to delay payment of a debt that has naturally matured. *Id.*

In the recent case of *Nobelman v. Amer. Sav. Bank, supra*, the Supreme Court held that a Chapter 13 plan, in which the debtors proposed to bifurcate a lender's claim

claim on which the last payment is due after the date on which the final payment under the plan is due....

into a secured claim and a worthless unsecured claim, modified the rights of a homestead mortgagee in violation of § 1322(b)(2). The Court confirmed that § 1322(b)(2) offers a "special protection for creditors whose claims are secured only by a lien on the debtor's home." *Id.* —— U.S. at ——, 113 S.Ct. at 2109. Justice Thomas emphasized that § 1322(b)(2) is aimed at protecting the contractual "rights" of home mortgage lenders rather than the "claims" secured by a home mortgage. *Id.* Although lender's contractual "rights" are limited by other statutory provisions of the Bankruptcy Code, the Court determined that such provisions exist outside of § 1322(b)(2)'s prohibition. *Id.* Accordingly, the Court interpreted § 1322(b)(2) to bar Chapter 13 debtors from relying upon 11 U.S.C. § 506(a) to reduce home lenders' undersecured claims to the fair market value of the mortgaged properties. *Id.* Application of the Supreme Court's rationale to the case before the Court, similarly precludes the Debtor from altering Fleet's rights by rewriting the terms of a fully matured home mortgage.

Section 1322(b)(5) allows a plan to cure any default on a secured or unsecured claim "on which the last payment is due after the date on which the final payment under the plan is due." In the absence of a brief, the Court assumes the Debtor is relying upon the general language of 11 U.S.C. § 1322(b)(3) and (b)(5) to extend payments under a mortgage that has matured. This Court agrees with the approach taken by another First Circuit bankruptcy court in a case specifically on point. *In re Maloney*, 36 B.R. 876 (Bankr.D.N.H.1984). The *Maloney* court held that a Chapter 13 plan could not be used to resurrect payments upon mortgage debt that matured by its own terms six months prior to the commencement of the bankruptcy proceeding. *Maloney, supra*. Judge Yacos distinguished two earlier cases, *Grubbs v. Houston First Amer. Sav. Ass'n*, 718 F.2d 694

11 U.S.C. § 1322(b)(2), (3), (5).

(5th Cir.1983)[2] and *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982), in which the principal issue was whether § 1322(b)(5) could be used to affect pre-bankruptcy accelerated mortgage debt. 36 B.R. at 877. In both *Grubbs*, 718 F.2d at 237, and *Taddeo, supra*, the debtors were allowed to de-accelerate their mortgages and reinstate the original payment schedule.

Courts which have allowed a debtor to "cure the default" in a mortgage that matured prior to the Chapter 13 petition have blurred the distinction between debts that mature by acceleration and debts that mature by passage of time. *See In re Dochniak*, 96 B.R. 100 (Bankr.W.D.Ky.1988); *In re Larkins*, 50 B.R. 984 (D.Ky.1985). The *Maloney* court found that the use of the "cure" concept in the statute only applies "to arrearages in a transaction which has gone into default in mid-term and in which the arrearages are paid off and the pre-acceleration payment schedule is resumed." *Maloney*, 36 B.R. at 877. *See also Grubbs, supra; Taddeo, supra.* Thus, the New Hampshire court concluded that the Chapter 13 debtor's attempt to cure a pre-bankruptcy matured mortgage debt impermissibly created a "new payment schedule" which clearly modified the rights of the mortgagee. *Maloney*, 36 B.R. at 878. *See also In re Seidel, supra; In re Bosteder*, 59 B.R. 878 (Bankr.S.D.Ohio 1986); *In re Palazzolo*, 55 B.R. 17 (Bankr.E.D.N.Y. 1985).

The Ninth Circuit reached the same conclusion in *In re Seidel, supra*, when the Chapter 13 debtor proposed to pay off the matured note securing debtor's home by installments over a five year period with a balloon payment at the end. Citing *In re Maloney, supra*, it relied upon the "plain meaning" rule and defined "cure" in § 1322(b)(3) and (5) to mean restoring matters to the status quo ante. *Id.* at 1386. In applying this definition of "cure", it reasoned that curing an unaccelerated debt that has naturally matured prior to the filing of the case results in reinstatement of the original payment terms of the debt. *Id.*

## IV. CONCLUSION

This Court agrees with the results reached in *Maloney* and *Seidel*, particularly since the holdings of these cases are consistent with the recently articulated views of the Supreme Court with respect to § 1322(b)(2). Reinstatement of the original terms of the Fleet's mortgage causes the debt to become immediately due and payable. Therefore, the Debtor's plan which provides for a long-term payout of the debt cannot be confirmed.

■ With respect to Fleet's Motion, Debtor's schedule "D" reveals that his residence is subject to a first mortgage to GE Capital in the principal amount of $22,000 and Fleet's second mortgage in the principal amount of $80,000. Additionally, Debtor's schedule "J" lists monthly income of $2,380.00 and monthly expenses of $1,958.00, which sum includes an $800.00 mortgage payment to Fleet. Even assuming Debtor could cure Fleet's prepetition arrearages and extend the terms of his note to Fleet, he lacks the disposable income to do so within a 60 month period. The Debtor would need income in excess of $1,500 a month in addition to the proposed plan payment of $129.50 to effectuate his plan as proposed. His disposable income of approximately $1,200.00 a month, excluding the $800.00 mortgage payment from his monthly expenses, is insufficient to service such a plan even if it were legally permissible to propose one. Accordingly, not only does Debtor's plan violate § 1322(b)(2), it is not feasible in any event given Debtor's projected monthly income and expenses. Since the Debtor's proposed amendment to his plan fails to address the consequences of Fleet's inevitable receipt of relief from stay and since the Debtor has failed to present any reasons for its approval, the

**2.** In *Grubbs v. Houston First Amer. Sav. Ass'n*, 730 F.2d 236 (5th Cir.1984), the Fifth Circuit, sitting *en banc*, reached a different conclusion than the three judge panel and held that there was no legislative intent behind § 1322(b) to bar a home mortgagor from curing a prepetition acceleration into maturity of unpaid installments due and paying arrearages during the term of the Chapter 13 plan. 730 F.2d at 237.

Court denies the Debtor's Motion to Amend and grants Fleet's Motion to Dismiss.