**In re Alice H. WHITE, Debtor.**

**Alice H. WHITE, Movant,**

**v.**

**Edgar A. LUTON, Respondent.**

**Bankruptcy No. 84–05435–H1–2. Adv. No. 84–1161–H1.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Feb. 8, 1985.

Marjorie A. Payne, Casciato, Payne & Havekost Legal Clinic, Houston, Tex., for Alice H. White.

Steven A. Leyh, Sellers & Berg, P.C., Houston, Tex., for Edgar A. Luton.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for hearing the complaint to set aside foreclosure filed by the Debtor, Alice H. White; as well as, the amended motion to modify stay and objection to confirmation filed by the Respondent, Edgar A. Luton; all issues having been joined; the parties being represented by their respective attorneys of record; on proof in Open Court; and the Court having heard and considered same finds, as follows, to-wit:

### I.

This Chapter 13 bankruptcy case was filed by the Debtor on October 26, 1984. The Court has jurisdiction of these core bankruptcy proceedings pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b).

Although the facts of this case are largely uncontradicted, a summarized recitation is set forth for purposes of clarity.

The Debtor and her former husband, William C. White, acquired the real property subject to these proceedings on or about June 10, 1969, jointly establishing their homestead rights in said property. The Whites were divorced in 1975, and the divorce decree contained a provision to the effect that Mr. and Mrs. White would retain undivided ownership interests in the real property which was to be subsequently sold when the Whites' youngest child reached the age of 18. The decree also provided that one spouse could purchase the other's undivided one-half interest. When the youngest child reached the age of 18, the Whites were apparently unable to consummate a sale to a third party purchaser. Consequently, Mrs. White borrowed the sum of $49,911.65, from the Respondent, Edgar A. Luton, and purchased her husband's undivided one-half interest with the loan proceeds. The loan was evidenced by a promissory note, dated March 24, 1982, which was secured by a deed of trust encumbering the real property, as well as, a vendor's lien recited in the warranty deed executed by Mr. White to Mrs.

White on the same date as the loan transaction. The promissory note required monthly installment payments through August 24, 1984, and then a final payment of all principal and accrued interest on or before September 24, 1984. As such, this promissory note fully matured according to its terms prior to the filing of this Chapter 13 bankruptcy case.

Although there is a dispute as to the extent of the lien created by virtue of the deed of trust and the vendor's lien, there is no dispute that Mrs. White defaulted under the provisions of the promissory note. Because of the default, the Respondent elected to accelerate the remaining balance due under the note, and initiated foreclosure proceedings pursuant to the deed of trust. On September 4, 1984, a foreclosure sale was conducted with the Respondent submitting the highest bid in the sum of $49,-911.65. On this same date, a trustee's deed was executed by the substitute trustee, Michael G. Tapp, *purporting to convey the entire parcel of property* to the Respondent. It is important to note at this point that there was a prior deed of trust and vendor's lien, superior to that held by the Respondent, in favor of First Mortgage Company of Texas, Inc., having a balance due and owing effective the date of this hearing in the approximate sum of $14,-500.00. Because of such, there is no question that any foreclosure of the Respondent's lien would be subject to the continued payment of this particular indebtedness. This would also hold true for any other priority liens such as ad valorem taxes, etc.

## II.

■ The first issue that must be decided is the extent of the lien held by the Respondent. Prior to purchasing her husband's undivided one-half interest in the property, Mrs. White owned the remaining undivided one-half interest which she claimed as her homestead. Article XVI, Section 50 of the Constitution of the State of Texas, delineates the extent to which a lien may be imposed against homestead property as follows, to-wit:

"The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of said purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead, without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void. This amendment shall become effective upon its adoption." (Const. Art. XVI Section 50 adopted Nov. 6, 1973).

It is clear from reading the above language that the Respondent in this case could acquire only a lien on the undivided interest in the real property acquired from Mr. White through the use of the loan proceeds. This conclusion is also in keeping with the principles of equity which this Court is obliged to observe. Mrs. White already owned a one-half interest in the property, and the funds loaned were sufficient only to acquire the other one-half interest. The section of the Texas Constitution quoted hereinabove, prevents the lien, created because of the loan, to extend to more homestead property than was actually acquired through the transaction.

The Court is aware that the deed of trust contains a provision to the effect that Mrs. White acknowledged that she did not claim any homestead rights or interest in any portion of the property superior to the lien of the deed of trust. However, as pointed out in the Debtor's brief, a Constitutional right cannot be waived by the printed language contained in a security instrument. See *Texas Land and Loan Company v. Blalock*, 76 Tex. 85, 13 S.W. 12 (1890). Although the deed of trust and the language effectuating the vendor's lien in the warranty deed imply that the entire property is encumbered, contrary to the interpretation advanced by the Debtor particularly as to the vendor's lien, this Court is of the opinion that the Texas Constitution mandates that the lien, regardless of the terminology found in either instrument, extends only to that property acquired with the purchase money loan proceeds, i.e., the undivided one-half interest formerly owned by Mrs. White's husband.

### III.

■ The value of this real property was estimated, *not established*, at between $85,000.00, to $110,000.00. The bid by the Respondent at foreclosure, which presumably included attorney's fees, costs, etc., was the sum of $49,911.65. Since the Court has found that the Respondent held a lien on only an undivided one-half interest in the real property, the foreclosure sale, as conducted, does not violate the test established by *Durrett v. Washington National Insurance Company*, 621 F.2d 201 (5th Cir.1980), nor the provisions of 11 U.S.C. § 548.

The *Durrett* opinion held that a foreclosure sale, conducted within one year of bankruptcy, was a fraudulent conveyance, in violation of 11 U.S.C. § 548, when the proceeds realized from the sale were less than seventy percent of the fair market value of the property foreclosed. This Court is not persuaded that this test will produce a desirable or even a reliable result in a majority of cases. The effect on mortgage lending is obviously chilling when the collateral proposed as security is real prop-

erty recently involved in a non-judicial foreclosure proceeding.

The Court is likewise not persuaded by the results reached in *In Re: Madrid*, 725 F.2d 1197 (C.A. 9th Cir.1984), wherein the Ninth Circuit Court of Appeals affirmed the Bankruptcy Appellate Panel but utilized a different theory to the effect that since the security instrument was executed and recorded more than one year before the bankruptcy filing that 11 U.S.C. § 548 was inapplicable by its limiting language. This Court's sense of logic is strained to accept the proposition that a foreclosure sale, followed by the execution and delivery of a Trustee's Deed, is not a transfer of a Debtor's interest in property.

This Court is more prone to accept the logic of the Bankruptcy Appellate Panel in *In Re: Madrid*, 21 B.R. 424 (Bkrtcy.App. 9th Cir.1982) wherein the panel decided that the consideration received from an arms length non-collusive foreclosure sale was presumptively a "reasonably equivalent value". This reasoning would permit each case to stand on its own merits. The United States Supreme Court was afforded the opportunity to resolve the conflict between the Fifth and Ninth Circuits on the appeal of the Ninth Circuit Court of Appeals decision in *In Re: Madrid*, supra, but chose not to do so.

### IV.

■ Because of the three reasons, noted immediately hereinbelow, the Court is of the opinion that the foreclosure sale, but not the lien held by the Respondent, should be vacated, to-wit:

1. When the foreclosure was conducted, the Respondent, as well as, the Debtor were both under the erroneous impression, or mutual mistake, that the lien encumbered the entire parcel of real property, when in fact it only encumbered an undivided one-half interest.

2. The "savings clause" in the deed of trust provides a remedy in the event that a defective foreclosure sale was conducted, to-wit:

"..... In case any sale hereunder is not completed, or is defective in the opinion

of the holder of the indebtedness secured hereby, such sale shall not operate as a waiver, and such holder shall have the right to cause a subsequent sale to be made by the Trustee; and the power of sale herein granted shall continue, and may be exercised as often as necessary, until all indebtedness secured hereby is fully and finally paid."

3. The language appearing in Article XVI, Section 50, of the Texas Constitution renders the sale of the *entire* property by foreclosure as void, to-wit: .

".... All pretended sales of the homestead involving any condition of defeasance shall be void...."

Therefore, the Court finds that the parties should be placed in the following positions:

1. The Respondent has a valid lien for the full balance of the debt owed to him, in the sum of approximately $66,515.21, encumbering an undivided one-half interest in the subject real property.

2. Since the foreclosure sale, as it was previously conducted, is being vacated by the Court, the Debtor is revested with the ownership of the real property, subject to the lien of the Respondent as set forth in the paragraph immediately preceding.

3. The indebtedness owed to the Respondent is secured exclusively by the Debtor's principal place of residence.

### V.

■ 11 U.S.C. § 1322(b)(2) and 11 U.S.C. § 1322(b)(5) provide as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(5) does not apply to this case because the debt owed to the Respondent fully matured pursuant to its terms prior to this bankruptcy filing. See *In Re: Maloney*, 36 B.R. 876 (Bkrtcy.D.N. H.1984); *In Re: Seidel*, 31 B.R. 262 (Bkrtcy.D.Or.1983); and *In Re: Fontaine*, 27 B.R. 614, 8 C.B.C.2d 1293 (9th Cir.B.A.P. 1982).

Because of 11 U.S.C. § 1322(b)(2), the Debtor in this case cannot modify the debt owed to the Respondent, and consequently is bound according to its terms. In its present form, the proposed Chapter 13 plan cannot be confirmed by this Court. Therefore, the objection to confirmation raised by the Respondent is well taken and must be sustained.

### VI.

Inasmuch as the foreclosure sale has been vacated, the motion to modify the automatic stay filed by the Respondent seeking authority to commence a forcible entry and detainer action against the Debtor in the Texas Justice of the Peace Court is rendered moot and is hereby overruled. Because there is no motion seeking relief from the automatic stay to permit a renewed foreclosure of the deed of trust held by the Respondent, the Court is unable to dispose of this issue at this time. However, should an appropriate motion be filed, absent full payment of the indebtedness owed to the Respondent which cannot be modified as set forth hereinabove, the Court would have no choice but to permit the Respondent to exercise his legal right of foreclosure as to the undivided one-half interest in the real property acquired by virtue of the purchase money that he loaned.

### VII.

In attempting to untangle the convoluted issues existing in this case, the Court has done the following:

1. The Respondent's lien has been defined now to extend to an undivided one-half interest in the subject real property.

2. The foreclosure sale conducted on September 4, 1984, has been vacated because it purported to erroneously convey a greater interest in the subject real property than legally was available to convey, being void under the provisions of the Texas homestead law.

3. The total indebtedness owed to the Respondent cannot be modified because of the provisions of 11 U.S.C. § 1322(b)(2), inasmuch as this indebtedness fully matured according to its terms prior to the filing of this bankruptcy case.

The Debtor and the Respondent must now chart the course of this case by filing appropriate pleadings as indicated hereinabove.

An Order will be entered consistent with this Opinion.