**In re Bruce David JOHNSON, Sharon Lynne Johnson, Debtors.**

**Bankruptcy No. 587–42.**

United States Bankruptcy Court, N.D. Ohio.

July 16, 1987.

---

Robert M. Whittington, Akron, Ohio, for debtors.

Richard A. Wilson, Kent, Ohio, for creditors.

Jerome Holub, Akron, Ohio, Trustee.

## FINDING AS TO OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

H.F. WHITE, Bankruptcy Judge.

This matter came before the court on the objection of Burdette A. Machamer and Arletta M. Machamer, creditors, filed April 28, 1987, to the first amended chapter 13 plan of Bruce David Johnson and Sharon Lynne Johnson, debtors, filed April 15, 1987. A hearing was held on the objection on June 8, 1987; Robert M. Whittington, Jr. appeared on behalf of the debtors, and Richard A. Wilson appeared on behalf of the creditors. On June 8, 1987 the debtors filed a memorandum in support of confirmation of plan, and on June 18, 1987 the creditors filed a memorandum in support of objection to confirmation. The parties have stipulated to the validity of a land contract document which is central to the issue before this court. Based upon the representations of counsel, the exhibits and the case files, the court makes the following Finding of Fact and Law.

### FINDING OF FACT

1. On January 16, 1987 the debtors filed a petition for relief under chapter 13 of title 11 of the United States Code.

2. On January 28, 1987 the debtors filed their schedules listing total secured claims of $67,930, the majority of which, $63,200, arises from the listed security interest of the Machamers as vendors of a land contract for the sale of the residential real estate located at 3036 Randolph Road, Mogadore, Ohio. The debtors list total unsecured claims of $3,200.

3. On January 28, 1987 the debtors also filed a chapter 13 plan providing for payment of the Machamers' claim outside the plan.

4. On February 9, 1987 the Machamers filed a motion for relief from stay and/or for adequate protection and other equitable relief, alleging that the debtors had defaulted in performing the obligations under the land contract, and that $63,200 plus interest was immediately due and payable.

5. On April 15, 1987 the debtors filed their first amended chapter 13 plan providing 100% payment of delinquent land contract payments of $16,500 plus interest of $3,208.95 inside the plan over 48 months, and payment of all current monthly payments on the land contract outside the plan.

6. On April 23, 1987 the Machamers filed a proof of claim in the total sum of $65,352.55, consisting in part of arrearages of $16,352.55 as of March 26, 1987. A copy of the land installment contract is appended thereto. The contract was signed by the Machamers and the debtors on June 16, 1986. It provides for an initial down pay-

ment of $800, and an additional balloon payment of $14,200 on or before July 26, 1986 as down payment, and installment payments of $450 per month over 84 months.

7. All parties agree that the debtors are in default of payment of the lump sum of $14,200 and that the land installment contract was duly recorded in the land records by the recorder of Portage County, Ohio on July 1, 1986. *See* debtors' memorandum filed June 8, 1987 at 1 and creditors' memorandum filed June 18, 1987 at 1.

### ISSUES

1. Whether a land installment contract duly executed and recorded under the laws of the State of Ohio is an executory contract, or is in the nature of a financing device?

2. Whether a default in the timely payment of a balloon payment due under a land installment contract can be treated as a default under § 1322(b)(5) and cured by periodic payments over 48 months as proposed by the chapter 13 plan?

### DISCUSSION OF LAW

The debtors argue in their brief that the land installment contract is not governed by § 365, but is in the nature of a financing device, and that the debtors may treat the vendors' interest as a lien, and provide for the curing of default pursuant to § 1322(b)(5). The Court is in partial agreement with these premises. The court notes the thorough analysis of Judge Mabey in *In re Booth*, 19 B.R. 53 (Bankr.D.Utah 1982). *See also, In re Leazier*, 55 B.R. 870 (Bankr.N.D.Ind.1985); *Reich v. Burke (In re Reich)*, 54 B.R. 995, 1003 (Bankr.E.D. Mich.1985); *Thorpe v. Jones (In re Jones)*, 54 B.R. 697 (Bankr.E.D.Ark.1985); *Chapman v. Britton (In re Britton)*, 43 B.R. 605 (Bankr.E.D.Mich.1984); and *In re Cox*, 28 B.R. 588 (Bankr.D.Idaho 1983). *But see, Ledford v. McKinney (In re Bilberry)*, 32 B.R. 197 (Bankr.S.D.Ohio) (assumes without discussion that land contract is executory contract, and consequently, automatically rejected after 60 days after order for relief in chapter 7 case).

The first inquiry to be made by this court is the nature of the parties' property interests by reference to the underlying principles of state law. *Ohio v. Collins (In re Madeline Marie Nursing Homes)*, 694 F.2d 433 (6th Cir.1982). Ohio has enacted legislation to govern the creation and operation of the land installment contract; it is defined as

an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while *the vendor retains title to the property as security for the vendee's obligation.* Option contracts for the purchase of real property are not land installment contracts.

Ohio Rev. Code Ann. § 5313.01(A) (Anderson 1981) (emphasis added). Each land installment contract must conform with "the formalities required by law for the execution of deeds and mortgages," *id.* at § 5313.01(D), and must be recorded by the vendor within 20 days after its execution; *id.* at § 5313.01(C). *See also,* Ohio Rev. Code Ann. § 5301.25(A) (Anderson Supp.1986). If the vendee has paid a sum equal to, or in excess of 20 percent of the purchase price, or has paid in accordance with the terms of the contract for five years, the vendor may recover possession of the property only by use of proceedings for foreclosure and judicial sale. *Cuyahoga Metropolitan Housing Authority v. Watkins*, 23 Ohio App.3d 20, 491 N.E.2d 701 (1984). The vendor retains legal title and the vendee does not take legal title to the subject property until he or she has performed all the obligations under the contract. *Blue Ash Building & Loan Co. v. Hahn*, 20 Ohio App.3d 21, 23, 484 N.E.2d 186 (1984). The vendor may not place a mortgage on the property in excess of the balance due by the vendee without his or her consent. Ohio Rev. Code Ann. at § 5313.02(B).

The statutory language clearly describes the vendor's retention of title "as security for the vendee's obligation" to pay the balance of the installment payments under the land contract. The vendee "stands as an equitable owner of property sold under the contract." 20 Ohio App. at 21 (Syllabus Para. 2). In an unreported decision of an Ohio appellate court which held that a judgment lien of the vendor's creditor is subordinate to the vendee's interest, the court described the rights of the parties to a land as follows:

Both the vendor and purchaser have a beneficial interest in property which is the subject matter of a land contract. Cogshall v. Marine Bank Co. (1900), 63 Ohio St. 88; In Re Appropriation of Land for Highway Purposes (1962), 118 Ohio App. 207. The vendor holds more than naked title; he may mortgage his interest, up to the amount of the balance due, without the consent of the purchaser. R.C. 5313.02(B). The land contract vendor's interest consists of two parts, a right to payment of a sum of money and an interest in the land which declines in value with each payment. The vendor also has the right of forfeiture if the purchaser defaults. Although a judgment creditor may intercept the payments by attachment of garnishment, only this declining interest in the land is subject to foreclosure on a judgment lien as "lands and tenements" under R.C. 2329.02.

*Myers v. Parsley*, No. 85 CA 9 (Ohio 4th Dist.Ct.App. Mar. 14, 1986) [Available on WESTLAW, OH–CS database] (LEXIS, Ohio library, Cases file). The court also finds persuasive the unreported decision of the Sixth Circuit Court of Appeals in which it affirmed the bankruptcy court which held that under Michigan law, a land contract is not an executory contract. *Petz v. Hertzberg (In re Warren Estates Mobile Home Park, Inc.)*, 811 F.2d 607 (6th Cir. 1986). Under Michigan law, as interpreted by the bankruptcy court and affirmed by the Sixth Circuit, " 'the vendee in a land contract is vested with equitable title in the land and ...legal title remains in the vendor and is held as security for payment of the purchase price of the land.' " *Id.* (quoting *Barker v. Klinger*, 302 Mich. 282, 288, 4 N.W.2d 596 (1942)).

■ The interest of a vendor in real property subject to a land installment contract is like that of a mortgagee or a judgment lien creditor in real property, it is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(31) (Collier 1986). The interests of the vendor and vendee are recorded, the contract must comply with the formalities required of a deed or mortgage, the vendee's ability to mortgage the property is limited to the balance due on the land contract, third parties are put on notice of the interest of the vendee in the property upon recordation and their rights affected thereby, and the vendee's remedy is limited to foreclosure and judicial sale if the vendee has made substantial payment of the obligation under the land contract. A land installment contract is a hybrid of a mortgage and contract for the sale of land, and although under Ohio law both the vendor and vendee have been said to have a lien against the property or funds generated from the sale of the property, it is merely judicial gloss in an attempt to identify the parties' interests. The interest of a vendor in real estate subject to a land installment contract is sufficiently akin to a lien for the court to conclude that the contract is in the nature of a financing device. The denomination of the contract as "executory" by the Ohio statute is not determinative of the issue for federal bankruptcy law purposes. Nor is there any good purpose in treating the contract as executory under federal bankruptcy law until five years from the date of execution have passed, or until the vendee has paid 20 percent of the purchase price. Ohio Rev. Code Ann. at §§ 5313.07 and 5313.08. Foreclosure, judicial sale, forfeiture and forcible entry and detainer are merely remedies which may be employed by the vendor to enforce his or her contract rights.

■ The next issue presented is whether a default in the timely payment of a balloon payment due under a land installment

contract may be cured by periodic payments over 48 months under a chapter 13 plan. The court concludes it may not. A chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on the final payment under the plan is due." 11 U.S.C. at § 1322(b)(5). However, a chapter 13 plan may not modify the rights of holders of secured claims in which the claim is "secured only by a security interest in real property that is the debtor's principal residence." *Id.* at § 1322(b)(2). A "security interest" is a "lien created by an agreement." *Id.* at § 101(43). *See* discussion *supra* at 930.

The property at issue is residential real estate and the balloon payment due under the land contract was due before the debtors filed their petition, and they were in default of payment at the time they filed their petition. The power to cure a default in performance of an obligation under a contract does not include the power to modify. *Knez v. Bosteder (In re Bosteder),* 59 B.R. 878, 882 (Bankr.S.D.Ohio 1986). *See also, In re Taddeo,* 685 F.2d 24 (2d Cir. 1982). Where a chapter 13 plan proposes to cure a pre-petition default in the performance of an obligation to make a balloon payment due under a financing device, it must be denied confirmation as an impermissible attempt to modify a contract. *See Batt v. Fontaine (In re Fontaine),* 27 B.R. 614 (Bankr. 9th Cir.1982); *Bosteder,* 59 B.R. 878; and *In re Seidel,* 31 B.R. 262 (Bankr.D.Ore.1983). This is not a case of acceleration of a debt; the balloon payment, the debt at issue, had fully matured pre-petition. To repay this fully matured obligation by periodic payments over a period of 48 months would change the basic character and nature of the original obligation, and would modify the original provisions of the contract. The only "cure" of this default which may be permissible would be an immediate lump sum payment. *Bosteder,* 59 B.R. at 884.

The first amended chapter 13 plan of the debtors will not be confirmed over the objection of the creditors and vendees of the land installment contract. A separate order in accordance with this Finding will be entered.

## ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN

Based upon a Finding entered by this Court on the 16 day of July, 1987,

IT IS ORDERED that the objection of Burdette A. Machamer and Arletta M. Machamer, creditors, filed April 28, 1987, to the first amended chapter 13 plan of Bruce David Johnson and Sharon Lynne Johnson, debtors, filed April 15, 1987, is sustained, and confirmation of the plan is denied.