## In re Calvin DIXON.

### Bankruptcy No. 92–02835EEJ.

United States Bankruptcy Court,
S.D. Mississippi,
Jackson Division.

March 5, 1993.

John S. Simpson, Jackson, MS, for Copiah Bank.

Melvin Cooper, Jackson, MS, for debtor.

Harold J. Barkley, Jr., Jackson, MS, Chapter 13 Trustee.

## MEMORANDUM OPINION

EDWARD ELLINGTON, Chief Judge.

This proceeding came on for hearing upon the objection of Copiah Bank, N.A. to confirmation of the Debtor's chapter 13 plan. Copiah Bank asserts that the Debtor's proposed plan violates Bankruptcy Code § 1322(b)(2) by attempting to modify the Bank's rights arising out of a short term promissory note, secured only by the Debtor's residence, that had matured prior to the Debtor's petition for relief under the Bankruptcy Code. After considering arguments of counsel presented both at trial and by memorandum briefs, and otherwise being fully advised in the premises, this Court finds that the objection is not well taken and should be overruled. In so finding, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

The facts relevant to this proceeding are not in dispute. In June of 1989, the Debtor, Calvin Dixon, along with his wife, Heidi Dixon, executed a promissory note in the amount of $17,868.56 in favor of Copiah Bank. As security for the note, Copiah Bank holds a first deed of trust on a parcel of real property that is the Debtor's principal residence. There is no dispute as to the extent, priority or validity of Copiah Bank's lien.

Under the terms of the promissory note the Debtor was required to make 35 monthly payments in the amount of $350.00 beginning in July of 1989, with a final payment in the amount of $10,771.36 due in June of 1992. In accordance with its terms, the note matured in June of 1992, but the Debtor was unable to make the final "balloon payment."

On August 3, 1992 Calvin Dixon filed a petition for relief under chapter 13 of the Bankruptcy Code. In his chapter 13 plan, the Debtor proposes to satisfy the claim of Copiah Bank in full by making 60 equal

monthly payments with interest accruing at the 12% contract rate.[1] The parties are in agreement that on the date that Dixon filed his petition for relief his indebtedness to Copiah Bank was $12,542.26, and the value of the Debtor's home was $22,500.00.

Copiah Bank objects to the Debtor's proposed plan on the basis that the plan amounts to an impermissible modification of its rights under Bankruptcy Code § 1322(b)(2).[2] The sole issue for determination is whether this Court may confirm a chapter 13 plan that proposes to satisfy a secured creditor's claim, which is secured solely by the Debtor's principal residence, by full payment over the life of the plan, where the claim is based on a promissory note that became fully matured prior to the bankruptcy filing date.

## CONCLUSIONS OF LAW

█ Whether a debtor's chapter 13 plan may provide for the payment of a debt secured only by the Debtor's principal residence by full payment through the plan, when the last payment under the original obligation either came due prior to the commencement of the bankruptcy or will come due during the pendency of the bankruptcy is a question numerous courts have considered, and have reached a variety of conclusions. The Court notes that the present case involves a 36 month note secured only by the Debtor's principal residence that came due prior to the commencement of the case, and while the discussion of different fact situations is necessary to the Court's opinion, the holding of the Court is limited to the facts involved in the present case. Also, because the phrase "a claim secured only by a security interest in real property that is the debtor's principal residence" is somewhat cumbersome, the Court will refer to such a claim as a "home mortgage." However, the Court's opinion relates only to those claims secured solely by the debtor's principal residence, and not to claims wherein additional security is involved.

Section 1322 sets forth both mandatory and permissive provisions regarding the contents of a chapter 13 plan. The portions of § 1322 relevant to the present issue are found within the permissive provisions, being subsections (b)(2), (b)(3) and (b)(5) which provide as follows:

**11 U.S.C. § 1322**

**1322. Contents of plan.**

. . . .

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

As previously stated, there is no dispute that Copiah Bank's claim is a "claim secured only by a security interest in real property that is the debtor's principal residence." Hence, modification of the bank's rights is prohibited by subsection (b)(2). Additionally, since the final payment under the promissory note came due prior to the commencement of this case, Copiah Bank's claim is not a "secured claim on which the last payment is due after the date on which the final payment under the plan is due."

1. The actual mathematical calculation of monthly payments contained in the Debtor's plan is incorrect. At trial, counsel for the Debtor orally stated the Debtor's intention to modify the plan to reflect the correct calculations.

2. Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

Accordingly, Copiah Bank's claim does not fall within the parameters of subsection (b)(5), although an understanding of (b)(5) is important in considering case law on the issue at hand. Therefore, confirmation of the Debtor's chapter 13 plan hinges on whether he may travel under subsection (b)(3) to restructure his debt to Copiah Bank.

Some courts have held that subsection (b)(5) is the sole exception to subsection (b)(2), and unless a claim is long term debt falling within subsection (b)(5), a debtor has no right to cure a claim secured solely by his principal residence.[3] Other courts have impliedly held that subsection (b)(3) is inapplicable to a home mortgage by refusing to allow a cure of default on a home mortgage unless the last date for payment on the mortgage extends beyond the last payment under the chapter 13 plan.[4]

However, the Fifth Circuit Court of Appeals held in *Grubbs v. Houston First American Savings Ass'n*, 730 F.2d 236 (5th Cir.1984) (on rehearing en banc) that, in addition to subsection (b)(5), subsection (b)(3) may be used to cure a default on a home mortgage.[5] The *Grubbs* case involved a three year home mortgage that had been accelerated as a result of the debtor's default prior to commencement of the chapter 13 case. Under the non-accelerated terms of the mortgage the last payment came due during the term of the proposed chapter 13 plan. Grubb's chapter 13 plan proposed to deaccelerate the debt, to pay all prepetition delinquent and matured amounts by monthly installments over a 36 month plan, and to maintain regular monthly payments on the claim. Reversing the bankruptcy court's denial of

confirmation and remanding for consideration of Grubb's chapter 13 plan, the court stated:

> The acceleration triggered by Grubb's default in payment was thus curable under § 1322(b)(3), rather than (5). While the proposed plan might possibly not be able to "modify" the obligation to pay monthly installment amounts that became due on a home-mortgage subsequent to the filing of the Chapter 13 petition, § 1322(b)(2), it could nevertheless provide for the payment from future income of previously non-accelerated matured amounts that had become due prior to the filing of the Chapter 13 petition, §§ 1322(a), 1327, 1328(a).

*Id.* 730 F.2d at 247.

■ Therefore, in this judicial circuit the issue is settled that subsection (b)(3) may be used to cure a default on a short term home mortgage. It also is settled that the power to cure under subsection (b)(3) includes the power to deaccelerate a claim that was accelerated prepetition. Unfortunately, whether the Debtor's proposed treatment of Copiah Bank's claim, which does not involve a deacceleration, constitutes a permissible "cure" under subsection (b)(3) or an impermissible "modification" under subsection (b)(2) is not so easily answered.

In reaching its decision, the *Grubbs* court relied on *Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2nd Cir.1982) wherein the court held that the term "cure" included the ability to deaccelerate a long term mortgage that had been accelerated prepetition, stating:

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Con-

---

**3.** See e.g., *Linzmeier v. Bull's Eye Credit Union (In re Linzmeier)*, 138 B.R. 59 (Bankr.W.D.Wis. 1991); *In re Davis*, 91 B.R. 477 (Bankr.N.D.Ill. 1988).

**4.** See e.g., *In re La Brada*, 132 B.R. 512 (Bankr. E.D.N.Y.1991); *In re Johnson*, 75 B.R. 927 (Bankr.N.D.Ohio 1987); *Knez v. Bosteder (Matter of Bosteder)*, 59 B.R. 878 (Bankr.S.D.Ohio 1986); *In re Schilling*, 64 B.R. 319 (Bankr. D.Nev.1986); *In re White*, 47 B.R. 98 (Bankr. S.D.Tex.1985).

**5.** In its first opinion, *Grubbs v. Houston First American Savings Ass'n*, 718 F.2d 694, (5th Cir. 1983) *reh'g granted*, 718 F.2d 699 (5th Cir.1983), the Fifth Circuit stated that "we conclude that Section § 1322(b)(3) is not applicable to the residential note held by Houston First and, as a result, is not available to Grubbs to allow him to cure his pre-petition default on that note. The only situation in which the rights of a holder of a claim secured by an interest in real property that is the debtor's principal residence may be modified is one which satisfies Section § 1322(b)(5)." *Id.* at 697 (footnote omitted).

gress intended to allow mortgagors to "deaccelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences-here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code.

. . . .

Secondly, we believe that the power to "cure any default" granted in § 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in § 1322(b)(2) because we do not read "curing defaults" under (b)(3) or "curing defaults and maintaining payment" under (b)(5) to be modifications of claims.

*Id.* at 26–27.

Following the *Grubbs* decision, the Seventh Circuit Court of Appeals decided *Matter of Clark*, 738 F.2d 869 (7th Cir.1984), which also involved a chapter 13 plan that proposed to cure a prepetition acceleration of a long term mortgage. In holding that the power to cure included the power to deaccelerate the debt the court reasoned as follows:

The terms "modify" and "cure" are nowhere defined in the Bankruptcy Code. However, it is clear that Congress intended "cure" to mean something different from "modify"; otherwise, in light of (b)(2), (b)(3) would be superfluous.

. . . .

Ordinarily, the means by which one cures a default is by paying all amounts due and owing; however, "cure" is the end, not the means, and what the term refers to is the restoration of the way things were before the default. Thus, the plain meaning of "cure," as used in § 1322(b)(2) [sic] and (5), is to remedy or rectify the default and restore matters to the *status quo ante.*

*Id.* at 871–872.

Each of the above cases dealt with the deacceleration of a home mortgage through a chapter 13 plan. In cases involving a home mortgage which became fully matured prepetition without the benefit of acceleration, generally two lines of authority have emerged, which the Court will attempt to discuss in this opinion. One line of authority reasons that a chapter 13 plan which extends payment beyond the final payment date contained in the original agreement is a modification of rights, and is prohibited by subsection (b)(2), notwithstanding the fact that the plan proposes full payment of the claim. The second line of authority holds that subsection (b)(3) provides for the curing of any default through a chapter 13 plan. If a home mortgage becomes fully due prior to the commencement of the chapter 13 case, then the entire amount is in default and may be cured through a chapter 13 plan.

The first line of cases is led by *Seidel v. Larson (In re Seidel)*, 752 F.2d 1382 (9th Cir.1985), wherein the Ninth Circuit Court of Appeals considered whether a chapter 13 plan may be confirmed that proposes to satisfy a home mortgage claim that had fully matured prepetition, by making 59 monthly payments followed by a final balloon payment for the balance of the claim. In holding that the proposed plan was a modification of the creditor's rights under subsection (b)(2), the court stated:

In our view, the plain meaning of the word "modification" in subsection (b)(2) must bar Seidel's plan. By postponing payment of the debt beyond the time originally contemplated by the parties to the contract, his plan clearly amounts to a unilateral "modification" of the original debt contract, as that word is ordinarily used.

*Id.* at 1384. *See also In re Amerson*, 143 B.R. 413, 419 (Bankr.S.D.Miss.1992); *In re Gianguzzi*, 145 B.R. 792 (Bankr.S.D.N.Y. 1992); *In re Harris*, 147 B.R. 17 (Bankr. N.D.Ohio 1992); *In re Witomski*, 126 B.R. 205 (Bankr.D.Md.1990); *In re Lumsden,*

112 B.R. 978 (Bankr.W.D.Mo.1990); *In re Johnson*, 75 B.R. 927 (Bankr.N.D.Ohio 1987); *In re Hemsing*, 75 B.R. 689 (Bankr. D.Mont.1987); *In re Sennhenn*, 80 B.R. 89 (Bankr.N.D.Ohio 1987) *aff'd* 80 B.R. 93 (N.D.Ohio 1987); *In re Schilling*, 64 B.R. 319 (Bankr.D.Nev.1986); *In re Palazzolo*, 55 B.R. 17 (Bankr.E.D.N.Y.1985).

While recognizing the Fifth Circuit's decision in *Grubbs*, the Ninth Circuit further stated:

We do not ignore those circuits that have held that defaults arising out of the acceleration of home mortgage debts can be "cured" under subsections (b)(3) and (b)(5). *In re Clark*, 738 F.2d 869, 874 (7th Cir.1984); *Grubbs v. Houston First Amer. Sav. Ass'n*, 730 F.2d 236 (5th Cir. 1984) (en banc); *In re Taddeo*, 685 F.2d 24, 28 (2d Cir.1982) These decisions, however, cannot be read to authorize the postponement of payments where a debt has already naturally matured, *without acceleration*, prior to the filing of the Chapter 13 petition.

The decisions rely on the fact that "the plain meaning of 'cure,' as used in § 1322(b)(3) and (5), is to remedy or rectify the default and restore matters to the *status quo ante.*" *Clark*, 738 F.2d at 872; *Taddeo*, 685 F.2d at 26–27. When a debt has been accelerated, "cure" therefore results in the reinstatement of the original payment terms of the debt. But when a debt has already naturally matured-as in Seidel's case-"cure" as defined by these courts cannot aid the debtor, since reinstatement of the original terms of the debt will merely make the debt immediately due and payable. *See In re Maloney*, 36 B.R. 876, 877 (Bankr. D.N.H.1984). The cure provisions discussed in decisions of other circuits are of no relevance where Seidel is seeking to delay payments on a debt that is immediately due and payable.

*Seidel*, 752 F.2d at 1386 (footnote omitted).

Likewise, the same rationale has been used to find that a modification of rights occurs when there is an extension of the final date for payment, even though the debt had not fully matured prior to the commencement of the bankruptcy, but would mature during the pendency of the chapter 13 plan. *See Western Equities, Inc. v. Harlan (In re Harlan)*, 783 F.2d 839 (9th Cir.1986); *Metropolitan Mortgage & Securities Co., Inc. v. Rubottom (In re Rubottom)*, 134 B.R. 641 (9th Cir. B.A.P. 1991); *Matter of Cooper*, 98 B.R. 294 (Bankr.W.D.Mich.1989).

As stated above, a second line of cases holds that a home mortgage which has fully matured prior to the commencement of the bankruptcy case may be cured under a chapter 13 plan. In considering whether a debtor may use a chapter 13 plan to cure a fully matured home mortgage claim, the court in *In re Williams*, 109 B.R. 36 (Bankr.E.D.N.Y.1989) held that the right to cure encompasses more than the right to deaccelerate mortgage payments, stating:

[A] debtor's right to cure should be interpreted so as to permit the debtor to use any method otherwise available to him to make the creditor whole, while at the same time, protect his assets. Accordingly, this Court believes that if a debtor's plan provides for payments with interest, the present value of which equals the full amount of the judgment plus interest and costs, the mortgagee is receiving exactly that which he would receive if the mortgagor debtor were to tender full payment and therefore is not a modification of a creditor's rights, but is a cure of the debtor's default pursuant to Section 1322(b)(3).

*Id.* at 41 (citations omitted); *See also In re Braylock*, 120 B.R. 61 (Bankr.N.D.Miss. 1990); *In re Taylor*, 95 B.R. 48 (Bankr. N.D.Miss.1988); *In Re Dochniak*, 96 B.R. 100 (Bankr.W.D.Ky.1988); *In re Spader*, 66 B.R. 618 (Bankr.W.D.Mo.1986); *In re Larkins*, 50 B.R. 984 (Bankr.W.D.Ky.1985); *In re Arnold*, 40 B.R. 144 (Bankr.N.D.Ga. 1984); *Capital Resources Corp. v. McSorley (In re McSorley)*, 24 B.R. 795 (Bankr. D.N.J.1982).

As is evident from the foregoing cases, the apparent conflict between the prohibition in subsection (b)(2) against modifying the rights of a creditor secured by a home mortgage, and the power to cure any de-

fault found in subsections (b)(3) and (5) is at the heart of the issue before the Court. The term "modify" is not defined anywhere in the Bankruptcy Code, and the definition intended by Congress is unclear, although numerous courts have analyzed the legislative history quite thoroughly, arriving at a variety of conclusions. What is clear, however, is that the term "modify" as used in subsection (b)(2) has some meaning other than the definition of "modify" as contained in *Black's Law Dictionary*.[6] The fact that a debtor has filed a petition for relief under the Bankruptcy Code works a modification of a creditor's rights.

There is substantial authority, led by the Ninth Circuit Court of Appeals, that the power to cure a home mortgage under subsection (b)(3) is limited to the power to deaccelerate the debt and to reinstate its original payment terms, and that a modification of rights, prohibited by subsection (b)(2), occurs when the final date for payment of a home mortgage is extended under a chapter 13 plan. However, absent a decision of the United States Supreme Court, this Court is bound by the authority of the Fifth Circuit Court of Appeals.

It is clear from the *Grubbs* case that subsection (b)(3) may be used to deaccelerate a home mortgage, although deacceleration is not an issue in the present case. Also, the *Grubbs* court allowed the debtor, in addition to deaccelerating the debt, to pay through a 36 month plan all prepetition matured amounts while maintaining the regular monthly payment. *Grubbs*, 730 F.2d at 247. While recognizing that a chapter 13 plan may not modify a creditor's right to receive monthly payments that become due postpetition, the court did not find that payment of prepetition matured amounts over the life of a plan constitutes a modification.

As previously stated, *Grubbs* involved a three year home mortgage that matured during the term of Grubbs' proposed chapter 13 plan. While Grubb's regular month-

ly payments would cease at some time prior or to completion of the plan, payments for prepetition matured amounts would continue for the full 36 month plan. Under Grubbs' proposed plan, payments for prepetition matured amounts would, in fact, extend beyond the final date for payment under the original three year mortgage. Therefore, it does not appear that the definition of "modify" which has been adopted by the Ninth Circuit in *Seidel*, and by numerous other courts, is the definition to which the Fifth Circuit ascribes.

As this Court understands *Seidel* and those cases which follow *Seidel*, the distinction between curing a default on a long term home mortgage by payments through a chapter 13 plan and curing a default on a mortgage that has fully matured prepetition by payments through a chapter 13 plan, is that the latter modifies the creditor's rights by extending the final payment date. As this Court interprets these decision, these courts seem to be saying that the restructured payment through a chapter 13 plan of prepetition arrearage on a home mortgage constitutes a permissible cure to the extent that the cure is completed by the earlier of the final payment date under the original obligation or the final payment under the chapter 13 plan.

*Grubbs* did not link the time limit for cure of prepetition matured amounts to the payment schedule under the original obligation, but instead held that the cure of default could be made over a 36 month plan. Similarly, this Court is of the opinion that the Debtor in the present case may cure his default by making 60 even payments over the life of his chapter 13 plan equal to the full amount of Copiah Bank's claim with interest accruing at the contract rate. The only difference in *Grubbs* and the present case is the percentage of the total claim in default at the time the respective cases were commenced, and that the present Debtor does not have regular monthly payments to maintain postpetition.

---

**6.** Modify is defined as follows: "To alter; to change in incidental or subordinate features; enlarge, extend; amend; limit, reduce. Such alteration or change may be characterized, in quantitative sense, as either an increase or decrease." *Blacks Law Dictionary* 905 (6th ed. 1990).

The Court would also observe that even if the Court were to hold that Debtor could not restructure his debt to Copiah Bank under a chapter 13 plan, he certainly could seek to achieve the same result under a chapter 11 reorganization.[7]

## CONCLUSION

For the foregoing reasons, the objection to confirmation filed by Copiah Bank will be overruled by separate order. An order confirming the Debtor's plan will be entered which will provide that Copiah Bank will be paid in full, in 60 equal monthly payments, with interest accruing on the unpaid balance at the contract rate of 12% per annum.

---

7. *See Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (individual debtor eligible for chapter 11 relief). *See also In re Gregory,* 39 B.R. 405, 408–9 (Bankr.M.D.Tenn. 1984) (n. 7), wherein Judge Lunden, in dicta recognized the effect of *Seidel* as compelling a debtor with a fully matured home mortgage to seek relief under chapter 11 instead of chapter 13.